629 A.2d 949

COMMONWEALTH of Pennsylvania

v.

Nelson HILL, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 1, 1993.

Filed July 9, 1993.

Reargument Denied Aug. 31, 1993.

Suzanne M. Swan, Public Defender, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before ROWLEY, President Judge, and CIRILLO and OLSZEWSKI, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Allegheny County. We affirm.

Following a non-jury trial before the Honorable Robert C. Gallo, appellant Nelson Hill was convicted of third-degree murder, a felony of the first degree. *See* 18 Pa.C.S. § 2502(c). The court sentenced Hill to a term of imprisonment of ten to twenty years. On appeal, Hill challenges the sufficiency of the evidence and the sentencing judge's decision to sentence him in the aggravated range of the Sentencing Guidelines.[1]

 Hill argues the evidence presented was insufficient to support a third-degree murder conviction, claiming that he stabbed the victim in self-defense. Our standard of review is well settled:

[W]e must review the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. [citation omitted]. The credibility of witnesses and the weight to be accorded the evidence are matters within the province of the trier of fact; the fact finder is free to believe all, some or none of the evidence. [citations omitted].

1. 204 Pa.Code Chapter 303, reproduced at 42 Pa.C.S. § 9721.

*Commonwealth v. Taylor,* 324 Pa.Super. 420, 424–425, 471 A.2d 1228, 1229–1230 (1984).

The facts, viewed in the light most favorable to the Commonwealth as verdict winner, reveal that in the early morning hours of August 14, 1990, two Pittsburgh police officers were called to an apartment building where a fight had occurred. When the officers arrived at the scene, they were told that there was an injured person in a second floor apartment. The officers found the victim, Eugene Thomas, lying on the kitchen floor of the apartment, face down and unconscious. The officers observed blood all over the floor. The officers were told by two people on the premises that someone by the name of Nelson had been in the apartment and that they had observed him leave the building. The victim was transported to Presbyterian Hospital where he died a few days later from a major wound to the chest.

Following a search, the officers found a silver knife with a black handle and a five inch blade. The knife was found outside the apartment building underneath the tire of a parked car. Blood discovered on the knife was sent to the crime laboratory.

Later that same day, police headquarters received a telephone call from the suspect's cousin, Ethel Mills. She stated that the suspect, Nelson Hill, was with her and that he wanted to turn himself in. The officers arrived at Ms. Mills' home where Ms. Mills introduced the officers to Hill. The officers then accompanied Hill to Gateway View Plaza where Hill gave the officers the following statement: Hill, the victim, and two other men had been drinking alcohol on the day of the homicide. An argument ensued between the victim and Hill over the origin of a rumor that the victim had been sleeping with Clinton Peterson's wife. Thereafter, Hill left the victim and went to a bar where he had a few drinks. After leaving the bar, Hill went to Peterson's apartment to spend the night; Peterson's apartment was "a hangout for everybody [in the neighborhood]." After letting Hill into the Peterson's apartment, the victim brought up the rumor about Peterson's wife and threatened to get his brother's friends to beat up Hill and

Hill's brother because of the rumor. The victim grabbed Hill by his shirt collar and a struggle ensued. During the struggle, Hill stabbed the victim in the chest area. Both Hill and the victim fell to the floor. The victim landed on top of Hill. Hill apparently took another swing with the knife toward the victim's chest area and somehow maneuvered to get out from underneath the victim and managed to stand up. Hill told the officer that he thought he had made contact with the victim's chest area with the second swing of the knife. Hill stated that he told Peterson that he had stabbed the victim and asked Peterson to call a paramedic.

The victim was approximately six feet tall and weighed approximately 205 pounds; Hill weighed 130 pounds. One of the officers testified that Peterson told him that the victim was the initial aggressor and that Hill did not want to fight. Further, Hill indicated to the officer that he was intimidated by the victim's size.

■ "Murder is an unlawful killing of another with malice aforethought, express or implied." *Commonwealth v. Hardcastle,* 519 Pa. 236, 250, 546 A.2d 1101, 1107 (1988), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). Third-degree murder is defined in the Crimes Code as "[all] other kinds of murder" other than first-degree murder or second-degree murder. 18 Pa.C.S. § 2502(c). The elements of third-degree murder, as developed by case law, are a killing done with legal malice but without the specific intent to kill required in first-degree murder. *See Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979). "Malice express or implied is the criteria and absolutely the essential ingredient of murder." *Commonwealth v. Commander,* 436 Pa. 532, 537, 260 A.2d 773, 776 (1970).

■ The definition of malice, as set forth in *Commonwealth v. Drum,* 58 Pa. 9 (1868), includes "recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* at 15; *see also Commonwealth v. Hilbert,* 476 Pa. 288, 382 A.2d 724 (1978). Under the Crimes Code, 18 Pa.C.S. § 101 *et seq.,*

the offense of third-degree murder incorporates common law malice as an element. 18 Pa.C.S. §§ 2501, 2502(c).

 "A person may be convicted of third-degree murder where the murder is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought." *Commonwealth v. Pigg*, 391 Pa.Super. 418, 425, 571 A.2d 438, 441 (1990), *alloc. denied*, 525 Pa. 644, 581 A.2d 571 (1990); *see also Commonwealth v. Seibert*, 424 Pa.Super. 242, 622 A.2d 361 (1993). Malice may be inferred from the intentional use of a deadly weapon on a vital part of the body. *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068, *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978). Further, malice imports the absence of justification. *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973). Thus, when a defendant claims self-defense, the Commonwealth must disprove that claim beyond a reasonable doubt. *Hinchcliffe*, 479 Pa. at 552, 388 A.2d at 1069. Hill's claim of self-defense placed upon the Commonwealth the burden to prove beyond a reasonable doubt that he did not act in self-defense. *Hinchcliffe*, 479 Pa. at 552, 388 A.2d at 1069.

 Here, the victim died as a result of a stab wound to the chest. The victim, although considerably larger in stature than the defendant, was unarmed. The evidence in this case indicates that Hill used a deadly weapon on a vital part of the victim's body. Malice, therefore, could properly be inferred. *See Hinchcliffe, supra; Pigg, supra; Seibert, supra.*

 Hill contends, however, that the inference of malice was negated by his theory of self-defense because the Commonwealth did not disprove, beyond a reasonable doubt, that his actions were necessary to defend himself. As Hill notes, when properly placed in issue, it is the Commonwealth's burden to disprove self-defense beyond a reasonable doubt; a defendant has no burden to prove self-defense. *See Commonwealth v. Gelber*, 406 Pa.Super. 382, 391, 594 A.2d 672, 676 (1991), *alloc. denied*, 529 Pa. 667, 605 A.2d 332 (1992).

In order to meet its burden of disproving a defendant acted in self-defense, the Commonwealth must establish one of the following elements beyond a reasonable doubt:

(1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that appellant used more force than was reasonably necessary to save himself from death, great bodily harm, or the commission of a felony;

(2) that appellant provoked the use of force; or

(3) that appellant had a duty to retreat and that retreat was possible with complete safety.

18 Pa.C.S. § 505(b)(2); *see also Commonwealth v. Helm,* 485 Pa. 315, 402 A.2d 500 (1979); *Commonwealth v. Zenyuh,* 307 Pa.Super. 253, 453 A.2d 338 (1982). "Establishment beyond a reasonable doubt of any one of these three elements will insulate the conviction from a defense challenge to the sufficiency of the evidence in a case where self-protection is at issue." *Commonwealth v. Eberle,* 474 Pa. 548, 554, 379 A.2d 90, 93 (1977).

■ In *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974), the Pennsylvania Supreme Court observed:

[T]he requirement that the defendant be operating under a reasonable belief that he is in imminent danger of death, great bodily harm, or some felony, involves two elements. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. The first element is entirely subjective; the second element is entirely objective.

*Id.* at 334, 326 A.2d at 292 (citation omitted). The issues of whether a defendant acts out of an honest, bona fide belief and whether such belief was reasonable are questions properly resolved by the finder of fact.

Here, the record supports the trial court's finding that at the time of the stabbing appellant did not believe he was in immediate danger of death or serious physical harm. The trial court found that although the victim grabbed Hill by the

collar, there was no threat of serious bodily injury. The record supports this finding; the victim "grabbed [Hill] by his shirt collar ... when [Hill] stabbed the victim." (N.T. 5/7/91, p. 34).

It is therefore clear that the trial court as finder of fact simply did not believe Hill's assertion that he acted under the belief that deadly force was necessary. As the trial court stated in its opinion, "although the victim grabbed [appellant] by the collar and was physically larger than him, this does not invite one to grab a knife and use deadly force on a vital part of the body." *See Commonwealth v. Carbone*, 524 Pa. 551, 574 A.2d 584 (1990) (despite disparity in height and weight and the defendant's claim that the victim had attempted to rape her, the Supreme Court found that the inference of malice from defendant's use of a kitchen knife on the victim's back and chest was not negated and the Commonwealth had disproved self-defense beyond a reasonable doubt; court upheld first-degree murder conviction).

■ Next, Hill argues that the sentencing court failed to adequately state its reasons on the record for sentencing in the aggravated range of the Guidelines.[2] The Sentencing Code provides in part:

In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines.

42 Pa.C.S. § 9721(b). Here, the sentencing court stated that it had reviewed the presentence report. The court also stated on the record that the court's basis for sentencing as it did was the fact that the crime was committed with a deadly weapon, in addition to a consideration of the presentence

---

**2.** Hill was sentenced to a term of imprisonment of ten to twenty years, clearly a legal sentence. *See* 18 Pa.C.S. § 1103(1).

report. In our considered opinion, we conclude that this satisfies the requirements of section 9721(b) of the Sentencing Code as well as the Pennsylvania Supreme Court's decisions in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977) and *Commonwealth v. Devers,* 519 Pa. 88, 96–98, 546 A.2d 12, 16 (1988).

In *Riggins,* the Court required that the sentencing court state its reason for the sentence on the record. In *Devers,* the Supreme Court was presented with the opportunity to clarify the *Riggins* requirement:

We emphatically reject, ... interpretations of our law in this area which call for separate, written opinions embodying exegetical thought. Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklist or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentencing report, the sentencing court's discretion should not be disturbed.

*Id.* at 101–02, 546 A.2d at 18 (emphasis added). In *Devers,* this court had vacated and remanded for resentencing because the trial court had fulfilled its factfinding function, but not its explanation function. For doing so, when the sentencing judge had ordered and reviewed a presentence report, this court was criticized:

[F]or we fail utterly to see how, based on the Superior Court's own statement of the case above, it is at all rational to believe that the sentencing judge could not have been so informed as to have arrived at a balanced judgment in imposing judgment.

*Id.* Simply put, the sentencing judge must state his or her reasons for the sentence imposed, *Riggins, supra;* a discourse

on the court's sentencing philosophy, as it applies to the defendant before it, is not required. The sentencing judge must explain its deviation from the guidelines if he or she chooses to sentence outside the guidelines. *See* 42 Pa.C.S. § 9721(b). Here, the court sentenced *within the guidelines, albeit within the aggravated range.* "The sentencing court is *not* required to state its reasons for sentencing within one *guideline range* over another." *Commonwealth v. Wright,* 411 Pa.Super. 111, 115, 600 A.2d 1289 (1991).

In *Devers,* the Supreme Court evoked the words of Judge Price in *Commonwealth v. Doyle,* 275 Pa.Super. 373, 418 A.2d 1336 (1979), noting his concern over "the increasingly fine web we are spinning around trial courts as regards sentencing procedures." *Id.* at 391, 418 A.2d at 1345–46. *Devers* has refined our case law on the sentencing requirements and serves as a caution to this court to extricate itself from the web of our own refinements—"the voluminous progeny [which] represent an intolerable deviation from [the Supreme Court's] original intent on this issue." *Devers,* 519 Pa. at 102, 546 A.2d at 18.

Judgment of sentence affirmed.