J. S28010/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ZAHER CYRUS, | : | No. 38 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 1, 2012,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0003973-2011

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND PLATT,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED AUGUST 04, 2014**

Zaher Cyrus, appellant, was involved in multiple shootings in the vicinity of Germantown and Erie Avenues in Philadelphia.  At approximately 11:00 p.m. on January 14, 2011, appellant shot and injured Anthony Redguard ("Redguard") and Anthony Dixon ("Dixon") outside of the Carmen Gardens Skating Rink.  Jason Howard, who was in front of a family member's home, was hit in the leg by a bullet from this shooting.  Later, in the early morning hours of January 15, 2011, appellant shot and killed Gary Jones ("Jones") at the nearby Eagle Bar; during the shooting Malik Wells ("Wells") was also injured after sustaining gunshot wounds.  Herein, appellant appeals the judgment of sentence entered on August 1, 2012, in the Court of Common Pleas of Philadelphia County.  We affirm.

---

* Retired Senior Judge assigned to the Superior Court.

**SKATING RINK**

At the time of the shooting, Ronnie Blalock was standing outside of the skating rink.  In a statement Blalock gave to the police, he explained that he was with appellant and Greg Slater ("Slater") when "some boy" (Redguard) walked across the street and said to appellant, "Why you looking at me?"  Appellant immediately pulled out a gun and Redguard pulled out a gun.  (Notes of testimony, 7/27/12 at 126-127.)  Blalock ran around the corner, and Slater went to his car and grabbed his gun.  (*Id.* at 127.)  Appellant shot "two-times" first and Slater also started shooting.  (*Id.*)  Blalock averred that appellant had a .40 caliber or .9 mm black gun and Slater had a .9 mm with an extended clip, which was black too.  (*Id.* at 128.)  Later that night, appellant saw Blalock and admitted that he "shot that boy" at the skating rink.  (*Id.* at 131.)  Blalock was shown photo arrays and identified Sherod Benson, appellant, and Redguard among others.  (*Id.* at 135-137.)  At trial, Blalock denied giving this statement to the police and denied having any knowledge of what had occurred.  In fact, Blalock denied even being at the skating rink or even knowing appellant.  (Notes of testimony, 7/26/12 at 102.)

At this same time, Lamont Griffin was leaving a party at the skating rink.  When the shots were fired, he got in his car and left without speaking to the police.  On January 18, 2011, Griffin was arrested for possession of drugs and was questioned about the shooting.  On January 19th, he provided

a statement to the police.[1]  Therein, Griffin stated he saw two black males exit a van from the driver's side and begin shooting at appellant, who was walking toward Westmoreland Avenue.  (Notes of testimony, 7/27/12 at 90-91.)  A third black male exited the passenger side of the van.  Griffin then ran up Hilton Street as the shots were being fired.  He heard over ten shots.  (*Id.* at 92.)  Griffin turned around and saw a black male running across the street shooting a gun.  (*Id.* at 91.)  The male was later identified as Slater.  He was also shown a photo array and identified appellant.  (*Id.* at 155.)

Detective John Bartol testified that he conducted a second interview with Griffin on February 3, 2011, due to contradictions in his first interview and information he received from other sources.  The second statement was read to the jury.  In this statement, Griffin told Detective Bartol that he saw appellant shooting.  He told the detective that he did not say anything earlier because of what could happen to him if anyone found out he talked to the police.  (*Id.* at 108-120.)

Officer Raymond Esquilin was one of several officers who responded to the scene of the shooting.  When he arrived, he saw a small crowd surrounding Redguard, who was lying on the ground and had suffered multiple gunshot wounds to his torso.  Redguard was immediately transported to the hospital.

---

[1] During the trial, both Griffin and Blalock denied knowing who shot Redguard.

Detective Glenn McClain testified that he was assigned to investigate the shooting outside the skating rink. He recovered 11 fired cartridge casings from a .9 mm caliber weapon, 8 fired cartridge casings from a .40 caliber weapon, and 3 projectiles. (Notes of testimony, 7/27/12 at 78-83.) An additional projectile was recovered at the hospital from Redguard's body, a .380 auto. (*Id.* at 86.)

Officer Raymond Andrejczak testified that he examined the ballistic evidence from the shooting outside the skating rink. He received and examined a total of 21 fired cartridge cases, three bullets, and one bullet jacket fragment. This included eight fired cartridge cases from a .40 caliber Smith and Wesson that were fired from the same weapon, ten fired cartridge cases from a .9 mm Luger that were fired from the same weapon, and two fired cartridge cases from a .380 caliber automatic that were fired from the same weapon. (Notes of testimony, 7/30/12 at 119-129.)

Officer Peter Singer testified that he responded to Einstein Hospital for a report of a shooting. Dixon told the officer that he was leaving a party at the skating rink and heard gunfire. He jumped into a taxi because of the shooting and realized he had been shot. The taxi driver took him to the hospital. However, hospital video surveillance did not show a taxi bringing in a shooting victim. Dixon suffered gunshot wounds to the right side of his chest. (Notes of testimony, 7/26/12 at 92-97.)

**EAGLE BAR**

Several hours later on January 15, 2011, at approximately 2:00 a.m., appellant and his friends were at the Eagle Bar located at Germantown and Erie Avenues. They posed for multiple photographs for a local photographer, Korbel Odd ("Odd"). Odd had set up his table and printer outside of the bar to take photographs of patrons. In each photograph, appellant was wearing a blue jacket with white sleeves and was holding a silver gun. (*Id.* at 100-101.) Several minutes after appellant and his friends had paid for their photographs, Odd heard multiple gunshots and ducked behind a car.

At trial, Odd testified that he could not see who was shooting the weapons. However, in an out-of-court statement he identified appellant from the photographs.[2] In the statement, Odd stated he saw a black male, who was approximately 5'10", shooting a silver gun. Odd also stated the shooter was wearing a blue and white jacket. Odd testified that he suffered from schizophrenia and was bipolar. (Notes of testimony, 7/25/11 at 96-140.)

Officers Floiran Pagan and Malisha Camps responded to a radio call regarding the shooting at the Eagle Bar. When they arrived, they saw Jones, who appeared to be critically wounded, and Wells, who was wounded. Both men were transported to the hospital. Dr. Edwin Lieberman opined

---

[2] Detective George Harkins interviewed Odd and read Odd's statement into the record.

that the cause of Jones' death was multiple gunshot wounds, and the manner of death was a homicide. Jones suffered multiple gunshot wounds to his chest, and the bullets traveled through his lungs and right forearm. (Notes of testimony, 7/27/12 at 21.) Wells sustained several gunshot wounds to the chest and was hospitalized for a week and then released.

Subsequently, the police took a statement from appellant. Appellant was shown photographs taken by Odd, and he identified himself, James Hains (known as "Crack"), and Michael Clark (known as "Bean"). In each photo, appellant is holding a .380 handgun. In essence, appellant claimed that he acted in self-defense when he shot and killed the victim. Appellant explained that he had gone to the Eagle Bar by himself and left with Crack and Bean. They posed for photographs and were waiting for the prints when a man came out of the bar and asked, "What the fuck are you looking at?" Appellant repeated the question back, and the male reached to his side. Appellant pulled out a gun and fired approximately five or six times. After he shot the male, he ran to his grandmother's home. Appellant told the police that he sold the gun he used in the shooting. (Notes of testimony, 7/30/12 at 33-59.)

Officer Edward Eric Nelson of the Firearms Identification Unit examined the ballistics evidence from the Eagle Bar shooting. He examined five fired cartridge casings from a .9 mm Luger and four fired cartridge casings from a

.380 caliber automatic. Officer Nelson testified that at least three guns were fired. (Notes of testimony, 7/30/12 at 84-112.)

Anthony Williams, an employee at the Eagle Bar, was present at the shooting and heard shots. (Notes of testimony, 7/25/12 at 36.) Williams testified that he did not see who fired the weapon. (*Id.* at 39, 44-46.) However, Williams provided the police with an out-of-court statement where he described the shooter. (*Id.* at 60.) In the signed statement, Williams averred the shooter was in his mid to late 20s, maybe early 30s, and about 5'10" tall. (*Id.*). Williams believed that this person fired the weapon two or three times. (*Id.* at 61.) Williams picked appellant's photo from an array and also identified Sherod Benson as the shooter. (*Id.* at 71.) Williams stated that the weapon was dark-colored. (*Id.* at 74.) Williams denied making the out-of-court statement.

Officer Andrejczak also testified that he compared the ballistics evidence from the Eagle Bar to the ballistics evidence from the skating rink and determined that the two fired cartridge cases from the .380 caliber automatic recovered at the skating rink came from the same .380 caliber automatic weapon fired at the bar. The ballistics evidence also matched when he compared the eight fired cartridge cases from the .40 caliber Smith and Wesson. (Notes of testimony, 7/30/12 at 128-129.)

## PROCEDURAL HISTORY

A jury trial commenced in July of 2012, and the verdict was rendered on August 1, 2012. Appellant was convicted of crimes charged in four different informations that were consolidated for a jury trial. At CP-51-CR-00003973-2011, appellant was convicted of the first degree murder of Jones, two counts of carrying a firearm on public streets, and possession of an instrument of crime. At CP-51-CR-0004819-2011, appellant was found guilty of aggravated assault of Dixon and possession of an instrument of crime.[3] At CP-51-CR-0004817-2011, appellant was found guilty of attempted murder of Anthony Redguard, aggravated assault of Redguard, and conspiracy. At CP-51-CR-0004814-2011, appellant was convicted of aggravated assault regarding Howard.[4]

Post-sentence motions were denied by operation of law on December 6, 2012, and this timely appeal followed. Herein, appellant challenges the sufficiency and the weight of the evidence and presents a claim of prosecutorial misconduct. (Appellant's brief at 3.)[5]

In his first argument, appellant contends the evidence was insufficient to support his convictions for murder, attempted murder, and aggravated

---

[3] Appellant was found not guilty of the attempted murder of Dixon.

[4] Co-defendant Benson's appeal is docketed at No. 38 EDA 2013.

[5] We note that an additional issue contained in his Rule 1925(b) statement has not been presented by appellant to our court in his brief; hence, we deem it to have been abandoned.

assault. (*Id.* at 8-12.) We note that appellant does not challenge his firearms convictions nor does he challenge the aggravated assault of Dixon at CP-51-CR-0004819-2001. With the exception of boilerplate citation to case law in reference to the elements of the crimes he challenges, appellant does not support his argument with citation to case law. When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa.Super. 2006). The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. ***Id.***; Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).

Despite appellant's paltry offering in terms of argument, minimal citation to the record and supporting case law, we will briefly review the sufficiency claims. Importantly, however, we observe that in his brief, appellant has confused the victims associated with the bills of informations he does challenge. For instance, CP-51-CR-0004817-2011 involved the attempted murder and aggravated assault of Redguard; the argument in appellant's brief in reference to CP-51-CR-0004817-2011 presents facts which appear to be associated with the attempted murder of victim Wells, although appellant does not actually name the victim. (Appellant's brief at 11.-12.) Additionally, CP-51-CR-0004814-2011 concerned the aggravated

assault of Howard; appellant's scant argument concerning the aggravated assault at this number refers to victim Redguard. (*See* appellant's brief at 11-12; notes of testimony, 7/24/11 at 4.) We will address the arguments in terms of the victims presented rather than the bills of information cited.

Appellant avers that the Commonwealth did not prove that he acted with malice or a specific intent to kill. (*Id.* at 9.) According to appellant, the incident at the Eagle Bar began when he was verbally accosted by the victim or his associates. (*Id.* at 11-12.) He then shot the victims out of fear and the instinct to protect himself. Appellant also avers that with regard to aggravated assault of Redguard, he shot the victim while defending himself and claims that he did not act with malice. (*Id.* at 12.) He concludes that the Commonwealth presented insufficient evidence to support any of the convictions. We disagree.

In reviewing a claim challenging the sufficiency of the evidence to support the verdict, we:

> view[] all the evidence admitted at trial in the light most favorable to the verdict winner, [and determine if] there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime

> beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super. 2003) (citations omitted).

"To sustain a conviction for first degree murder, the Commonwealth must prove that a defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was deliberate." *Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996), *cert denied*, 520 U.S. 1231 (1997). This court has held repeatedly that the use of a deadly weapon on a vital part of a human body is sufficient to establish the specific intent to kill. *Commonwealth v. Walker*, 656 A.2d 90, 95 (Pa. 1995), *cert. denied*, 516 U.S. 854 (1995). Additionally, the Commonwealth can prove the specific intent to kill from circumstantial evidence. *Commonwealth v. Brown*, 711 A.2d 444 (Pa. 1998).

Section 901 of the Crimes Code defines criminal attempt as follows:

**§ 901. Criminal attempt**

 **(a)**  **Definition of attempt.--**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime.

- 11 -

18 Pa.C.S.A. § 901(a).

> Under the Crimes Code, a person is guilty of aggravated assault if he:
>
> > (1)    attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
> >
> > . . . .
> >
> > (4)    attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1), (4).

We find the evidence sufficient to sustain appellant's convictions. Appellant admitted that he opened fire on the victims at the Eagle Bar, shooting both victims multiple times. Jones suffered fatal gunshot wounds in a vital area of his body. This alone is sufficient to establish specific intent to kill. **Walker**, **supra**. Wells was also severely injured after suffering gunshot wounds. Additionally, testimony was presented that appellant opened fire at the skating rink resulting in Redguard's gunshot wounds.

Despite shooting the victims multiple times, appellant argues the Commonwealth did not prove he acted with malice because his use of force was justified. Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense. In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following

elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat, and that retreat was possible with complete safety. *See* 18 Pa.C.S.A. § 505(b)(2); *see also Commonwealth v. Hill*, 629 A.2d 949, 952 (Pa.Super. 1993). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue. *See Hill*, 629 A.2d at 952. "Although the Commonwealth is required to disprove a claim of self-defense . . . a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa. 1990).

Viewing the facts in the light most favorable to the Commonwealth, we find the Commonwealth disproved appellant's claims of self-defense beyond a reasonable doubt. Appellant's claim relies on his self-serving statement that he thought the victim was reaching for a gun. However, the jury was free to disbelieve appellant's claim that he was in fear for his safety when he fired multiple shots at the victims or that the victim was the initial aggressor. The Commonwealth's evidence established all the elements

necessary to support appellant's convictions. We decline to extend any relief.

In the alternative, appellant argues that the verdict was not supported by the weight of the evidence. (Appellant's brief at 14.) Rather, the jury engaged in rampant speculation, conjecture, and surmise.

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original) (citations omitted).

Appellant essentially claims that his theory that he acted in self-defense was more persuasive than the Commonwealth's theory. Appellant again claims that the victim was the aggressor. Appellant essentially asks this court to view the evidence in his favor; such an argument is not pertinent to the weight of the evidence.

As the trial court explained, the jury heard consistent testimony describing appellant's actions and the extent of the injuries the victims suffered. The jury resolved those credibility determinations in favor of the Commonwealth and convicted appellant. The trial court concluded that the verdict was not against the weight of the evidence, and we must agree. Accordingly, we find the trial court did not abuse its discretion in rejecting appellant's weight of the evidence claim.

The final issue presented is whether the trial court erred when it failed to grant a mistrial upon appellant's objections to the prosecutor's closing argument. Appellant's brief cites to several portions of testimony. Specifically, he argues that during its summation, the Commonwealth improperly referred to the threatening presence of the audience in the courtroom to the witnesses who testified and that those present in the audience were in attendance to "send a message to the witnesses." (Notes of testimony, 7/31/12 Vol. II at 72-74.) Defense counsel also objected to

the prosecutor's reference to James Hanes. Hanes was depicted in the photographs taken on the night in question with appellant but he did not testify. The prosecutor commented on his presence in the courtroom audience. (*Id.* at 72-74, 96.)

Comments of the prosecutor in summation will not warrant a new trial unless it is inevitable that they prejudiced the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence and render a fair verdict. *Commonwealth v. Christy*, 656 A.2d 877, 885 (Pa. 1995), *cert. denied*, 516 U.S. 872 (1995). The decision to grant a mistrial based upon prosecutorial misconduct lies within the sound discretion of the trial court and will not be reversed unless there has been a flagrant abuse of discretion. *Commonwealth v. La*, 640 A.2d 1336, 1347 (Pa.Super. 1994), *appeal denied*, 655 A.2d 986 (Pa. 1994).

Instantly, the trial court notes that the comments were entirely consistent with what transpired in the courtroom. (Trial court opinion, 6/7/13 at 20.) Based on our review of the entire closing arguments, it is clear that the prosecutor's comments concerning witness intimidation were clearly in fair response to defense counsel's closing. Defense counsel repeatedly commented on the civilian witnesses' testimony and the fact that their stories changed. Defense counsel repeatedly referred to the Commonwealth's witnesses as liars. Defense counsel also commented on

the people who were present that did not testify. (Notes of testimony, 7/31/12 Vol. 2 at 7-8.)

Additionally, the trial court's cautionary instruction to the jurors, that counsel's arguments were not evidence and that they were to decide the case based solely on their own recollection of the evidence, cured any potential prejudice. It is well settled that a jury is presumed to follow the instructions of the court. ***Commonwealth v. Natividad***, 938 A.2d 310, 326 n.9 (Pa. 2007). Appellant's motion for mistrial was properly denied by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/4/2014