J. S30023/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| VERNEL J. McDONALD, | : | No. 2909 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, September 16, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0011816-2012

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E. AND JENKINS, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 22, 2015**

Vernel J. McDonald appeals from the judgment of sentence of September 16, 2014.  We affirm.

The facts of this matter have been aptly summarized by the trial court as follows:

> At approximately 5:20 p.m. on June 13th, 2012, Philadelphia Police Officer Kenneth Sherard responded to a radio call at the 8400 block of Lindbergh Boulevard, just north of Philadelphia International Airport.  Upon arrival, Officer Sherard saw Tyrell Brown lying face down on the sidewalk, in a large pool of blood that had accumulated around his neck area.  Brown was completely unresponsive, and Officer Sherard could detect no signs of life.  Officer Sherard saw several fired cartridge casings and a black wallet, all lying on the ground.  The wallet was lying near a blue Pontiac.
>
> Police recovered a Glock 23 .40 caliber handgun from the decedent's body.  Philadelphia

Police Officer Khaliv Ivy and his partner spoke on the scene with a man named Jamal, who would later be identified as Jamal Gregory. Gregory was distraught and said he was the decedent's cousin. He said that they had been approaching the scene of a prospective drug deal when males from a Blue Pontiac shot at them, killing Tyrell Brown. Officer Ivy recovered $1,028 and a plastic baggie containing thirty-one green tinted small Ziploc baggies from Gregory.

Police recovered seven fired cartridge casings at the scene. They also impounded the blue Pontiac, a G6 GT, from which they later recovered a Sturm Ruger Model P94, .40 caliber handgun. Police also received a bullet fragment from the right upper chest of the deceased, and a fragment from the left side of his neck. All seven of the casings found at the scene, as well as the bullet fragments found in the decedent, were fired from the P94 found in the blue Pontiac.

Detective James Crone took a statement from the defendant on September 15th, 2012, in which the defendant said that he met with the decedent and Jamal Gregory, who he knew as "Mally," on the night of the shooting. He was meeting with them in order to purchase Oxycontin, because his prescription pain medicine had been stolen. He reported that they robbed him at gunpoint, taking $1300 and his wallet. According to the defendant's statement, as the decedent and "Mally" were leaving the scene of the robbery, the defendant shot the decedent because the decedent was pointing a gun at him. The blue Pontiac G6 GT impounded from the scene belonged to the defendant.

Dr. Marlon Osbourne, Associate Medical Examiner, gave expert testimony that the decedent's death was caused by two bullet wounds to his back.

Jamal Gregory, the decedent's cousin, testified that he was present when the decedent was shot. He said that the decedent and the defendant argued

while in the defendant's car, but that he was leaning on the outside of the car and could not hear what they were arguing about. When the defendant got out of his car, Gregory took the defendant's phone and car keys. As he was walking away with them, he looked at the decedent and heard a gunshot, and then saw the decedent fall.

During the incident, the defendant was accompanied by a Kimey Wong, who did not testify at trial. Jamal Gregory testified that Kimey Wong was armed and chased him at gunpoint from the scene. Philadelphia Police Officer Torin Saunders testified that he arrested Wong near the scene of the shooting, and that employees of a local business pointed him toward an object that Wong dropped in a trash can, which turned out to be a gun.

The parties stipulated that the defendant did not have a license to carry a gun and was not eligible for such a license.

The defendant elicited character testimony from Jonathan Koutcher, Esq., James Zergani, Eugene Garfield, Kim Griffin, Stephen Troy, Kendall Swain, and Keith Robinson. The Assistant District Attorney asked Zergani, Garfield, Troy, and Swain whether knowing that the defendant was involved with a drug deal and had an illegal firearm would change their opinion as to the defendant's character.

Trial court opinion, 12/3/14 at 2-4 (citations to the transcript omitted).

On July 2, 2014, following a jury trial, appellant was found guilty of voluntary manslaughter, possession of an instrument of a crime, firearms not to be carried without a license, and carrying a firearm on the public streets of Philadelphia. Post-trial motions were denied. On September 16, 2014, the trial court imposed an aggregate sentence of 7½ to 15 years'

incarceration. Post-sentence motions were denied on September 24, 2014.

Appellant filed a timely notice of appeal on October 20, 2014. Appellant

complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has

filed an opinion.

Appellant has raised the following issues for this court's review:

> [1.] Was the evidence insufficient to support the charges because the Commonwealth failed to disprove beyond a reasonable doubt that appellant did not kill the victim in self-defense?
>
> [2.] Did the trial court commit an abuse of discretion by overruling objections to testimony concerning an unrelated crimes [sic] committed by Kimey or Kimmy Wong[?]
>
> [3.] Did the trial court commit an abuse of discretion by overruling objections to the prosecution's impeachment of appellant's character witnesses with the alleged facts of the instant matter?

Appellant's brief at 3 (capitalization omitted) (citation to the record omitted).

In his first issue on appeal, appellant argues that the Commonwealth

failed to disprove he was acting in self-defense when he shot Brown.

According to appellant, he had a reasonable belief that he was in mortal

danger when he shot Brown.

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt.

> This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed.
>
> ***Commonwealth v. Smith***, 710 A.2d 1218, 1219 (Pa.Super.1998) ***appeal denied***, 557 Pa. 638, 732 A.2d 1209 (1998) (citations omitted). Moreover, a jury may believe all, some or none of a party's testimony. ***See Commonwealth v. Purcell***, 403 Pa.Super. 342, 589 A.2d 217, 221 (1991).

***Commonwealth v. Burns***, 765 A.2d 1144, 1148 (Pa.Super. 2000), ***appeal denied***, 782 A.2d 542 (Pa. 2001).

> Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense. ***See id.*** In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. ***See*** 18 Pa.C.S.A. § 505(b)(2); ***see also Commonwealth v. Hill***, 427 Pa.Super. 440, 629 A.2d 949, 952 (1993). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue. ***See Hill***, 629 A.2d at 952.

***Id.*** at 1148-1149.

> In order to establish the defense of self-defense under 18 Pa.C.S. § 505, the defendant must not only show that he was protecting himself against the use

> of unlawful force, but must also show that he was free from fault in provoking or continuing the difficulty which resulted in the killing.

*Commonwealth v. Serge*, 837 A.2d 1255, 1266 (Pa.Super. 2003), *affirmed*, 896 A.2d 1170 (Pa. 2006), *cert. denied*, 549 U.S. 920 (2006) (footnote omitted) (citations omitted).

Appellant claims that Gregory was turning toward him and raising his gun. (Appellant's brief at 24.) This is based on appellant's statement to police, in which he related, "I proceed to get out of the car while their backs were turned. Mally still had his gun in his hand and he started to turn around. I pulled my gun. When Mally was pointing the gun at me, I shot." (Notes of testimony, 7/1/14 at 82.) However, this contradicts Gregory's testimony, in which he denied having a gun:

> Q. Mr. Gregory, did you have a gun on you that day?
>
> A. No.
>
> Q. Did you ever point any guns at anyone that day?
>
> A. No.

*Id.* at 143.

The jury was free to reject appellant's statement and accept Gregory's testimony, that he was unarmed, as the truth. In addition, while Brown did have a gun, it was recovered from his front pants pocket. (*Id.* at 222.)

Brown was shot in the back, indicating that he was walking away from appellant when he was shot. As the trial court remarks,

> Thus, it is impossible to conclude otherwise than that the danger to the defendant had passed at the moment of the shooting, and that the shooting was motivated by anger and fear at having been robbed at gunpoint, rather than by any kind of reasonable belief that his life was currently in danger.

Trial court opinion, 12/3/14 at 5.

Furthermore, appellant was not free from fault in provoking or continuing the difficulty. Brown and Gregory were walking away when appellant drew his weapon and exited the vehicle. The Commonwealth successfully disproved appellant's self-defense claim.

Next, appellant argues that the trial court abused its discretion in permitting testimony regarding unrelated criminal acts of Kimey Wong. Appellant claims that the testimony that Wong chased Gregory through a parking lot, shooting at him, was irrelevant and highly prejudicial. Appellant was not charged as an accomplice or co-conspirator of Wong's, and appellant argues that Wong's actions could unfairly be imputed to him, since they arrived together.

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of

> the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.
>
> ***Commonwealth v. Weakley***, 972 A.2d 1182, 1188 (Pa.Super.2009) (quoting ***Commonwealth v. Reid***, 571 Pa. 1, 811 A.2d 530, 550 (2002)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id.*** at 1188-89 (citing ***Commonwealth v. Carroll***, 936 A.2d 1148, 1152-53 (Pa.Super.2007)). "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." ***Id.*** (quoting ***Commonwealth v. Viera***, 442 Pa.Super. 348, 659 A.2d 1024, 1028 (1995)).

***Commonwealth v. Antidormi***, 84 A.3d 736, 749-750 (Pa.Super. 2014), ***appeal denied***, 95 A.3d 275 (Pa. 2014).

The evidence was admissible to refute appellant's self-defense claim. Appellant alleged that Gregory was armed and pointing a gun at him when he shot Brown. Evidence that Wong was chasing Gregory through the parking lot, shooting at him, corroborates Gregory's testimony that he was unarmed. In addition, the evidence was admissible to explain the three fired cartridge casings recovered from the middle school parking lot. They

matched the firearm which Wong abandoned in a restaurant trashcan. (Notes of testimony, 7/1/14 at 214-215.)

The evidence was also admissible as part of the natural development of the facts of the case. *See Commonwealth v. Burton*, 770 A.2d 771, 778 (Pa.Super. 2001), *appeal denied*, 868 A.2d 1197 (Pa. 2005), *overruled on other grounds by Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002) (evidence of other crimes, wrongs, or bad acts is admissible where they were part of a chain or sequence of events which formed the history of the case and were part of its natural development, also known as the 'complete story' rationale (citations omitted)). Gregory testified that someone other than appellant was shooting at him. (Notes of testimony, 7/1/14 at 145-147, 171.) According to Gregory, this other individual was chasing him through the middle school parking lot, firing as he ran. (*Id.* at 145-147.) Officer Torin Saunders' testimony concerning the apprehension of Wong in a nearby restaurant and the recovery of a firearm from a trashcan which matched the fired cartridge casings in the parking lot not only corroborated Gregory's testimony but also served to "complete the story" for the jurors. Furthermore, we agree with the trial court that any prejudice to appellant was minimal, where there was no allegation appellant told Wong to chase Gregory and the charges against appellant, that he shot Brown in the back multiple times, were far more serious than Wong's conduct. The trial court did not abuse its discretion in admitting this evidence.

Finally, appellant argues that the trial court erred in allowing the Commonwealth to cross-examine character witnesses about the allegations in this case, *i.e.*, that appellant was in possession of an illegal firearm and was attempting to purchase narcotics. Appellant contends that this was impermissible cross-examination.

> In a criminal case, the defendant may offer character witnesses to testify as to that defendant's reputation in the community regarding a relevant character trait. **See** Pa.R.E. 404(a)(1); 405(a). Of course, the Commonwealth may attempt to impeach those witnesses. **Commonwealth v. Hoover**, 16 A.3d 1148, 1149 (Pa.Super.2011) (citing **Commonwealth v. Morgan**, 559 Pa. 248, 739 A.2d 1033, 1035 (1999)). "For example, when cross-examining character witnesses offered by the accused, the Commonwealth may test the witnesses' knowledge about specific instances of conduct of the accused where those instances are probative of the traits in question." **Hoover**, 16 A.3d at 1149-50 (citing Pa.R.E. 405(a)). However, the Commonwealth's right to cross-examine character witnesses is not unlimited: the Commonwealth may not cross-examine a character witness about a defendant's uncharged criminal allegations, **Morgan**, 739 A.2d at 1035-36, or a defendant's arrests that did not lead to convictions. **Commonwealth v. Scott**, 496 Pa. 188, 436 A.2d 607, 611-12 (1981).

**Commonwealth v. Kuder**, 62 A.3d 1038, 1057-1058 (Pa.Super. 2013).

Appellant called several witnesses who testified to his good reputation in the community for being a law-abiding, non-violent, and peaceful person. The Commonwealth could then cross-examine them regarding the facts of this case, including that appellant was in possession of an illegal firearm and was attempting to purchase prescription pain medication off the street.

- 10 -

These allegations are not disputed. The Commonwealth did not ask the witnesses about uncharged criminal conduct. In addition, appellant effectively opened the door to such cross-examination by offering improper character testimony, *e.g.*, that his former employer considers him as a son and "one of the best guys that we have." (Notes of testimony, 7/2/14 at 38; Pa.R.E. 405(a) ("Testimony about the witness's opinion as to the character or character trait of the person is not admissible.").) *See Kuder*, 62 A.3d at 1058 ("Appellant opened the proverbial door and 'cannot complain that the Commonwealth chose to explore further what was behind that door.' The Commonwealth's cross-examination was directed toward what might change these personal opinions. This was a fair response to Appellant's direct examination."), quoting *Commonwealth v. Smith*, 17 A.3d 873, 914 (Pa. 2011).

Appellant relies on *Commonwealth v. Nellom*, 565 A.2d 770 (Pa.Super. 1989), which is inapposite. There, this court held that it was error to permit the Commonwealth to impeach the defendant's character witness as to her knowledge of the defendant's robbery conviction, which arose out of the same incident that gave rise to the charges for which the defendant was on trial. The defendant had been convicted of robbery, but the jury was deadlocked on the remaining charges, including rape. We held the robbery conviction was irrelevant because, "Evidence of the subsequent robbery conviction, however, would not in anyway [sic] call into question the

reliability of the character witness's testimony because, at the time the sexual offenses were allegedly committed, his reputation did not include a conviction for robbery." ***Id.*** at 776. The relevant time period for reputation evidence is at the time of or prior to the date of the offense for which the defendant is on trial; convictions that occur subsequent to the offense presently charged are irrelevant. ***Id.***

Here, the Commonwealth was not cross-examining the witnesses regarding a subsequent conviction. Rather, the Commonwealth questioned the witnesses about the facts of this case, including that appellant was in possession of an illegal firearm. This was an appropriate line of questioning in response to the witnesses' testimony that appellant had a good reputation for being a peaceful and law-abiding person. The Commonwealth can cross-examine the witnesses to show that their knowledge of appellant's reputation is unreliable or incomplete. There is no error here.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2015