J-S39006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GENE HAWKINS | : | |
| | : | |
| Appellant | : | No. 185 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 4, 2021
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0004138-2015

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED JANUARY 25, 2023**

Gene Hawkins appeals from his judgment of sentence issued by the Luzerne County Court of Common Pleas after a jury convicted him of third-degree murder. Hawkins first asserts the evidence was insufficient to support that conviction primarily based on his argument that the three witnesses to the murder were not credible. He also argues the trial court abused its discretion by dismissing and replacing a juror after it came to the court's attention during deliberations that the juror indicated to other jurors on the panel that she had prejudged the case. As we conclude that neither of these arguments have merit, we affirm.

Hawkins and LaShaun Overton lived in the same apartment complex in Hazelton, Pennsylvania. Late in the evening on September 3, 2015, several witnesses, who knew both Hawkins and Overton, saw Hawkins and Overton

engage in a verbal altercation in front of Overton's apartment. The witnesses also saw Hawkins leave the scene of the argument and return minutes later with a 12 to 14-inch knife in his hand. Overton was stabbed shortly thereafter. Although none of the witnesses testified, they saw Hawkins actually stab Overton, one witness testified he saw Hawkins raise his knife in the air in front of Overton, while another witness recounted how he saw Hawkins lunge at Overton and walk away with blood on his knife. After Overton was stabbed, Overton retrieved a firearm, followed Hawkins, and fired several shots.

Police were called to the complex and secured the crime scene. Apparently, Hawkins had called to have a pizza delivered, but when the delivery driver arrived, Hawkins grew angry and would not pay for the pizza because the driver refused to intrude on an active crime scene. *See* N.T. Jury Trial, 6/6/21-6/11/21, at 455-459. Hawkins also initially refused to identify himself when asked to do so by the police. Hawkins then tried to get past the police into the secured crime scene, claiming he wanted to get "loaves of bread." *Id.* at 69. He then left the scene to go for a "late night walk." *Id.* at 101.

Overton died from the stab wound, and Hawkins was subsequently charged with his murder. During the police investigation, DNA testing confirmed the presence of Overton's blood on Hawkins' T-shirt. ***See id.*** at 616-619, 635-637.

The matter proceeded to a jury trial in June 2021. The court told the jurors several times during jury selection that it was their responsibility to hear the evidence and base their verdict solely on that evidence, as well as to be fair and impartial.

After the jury was selected and testimony began, the Commonwealth called 18 witnesses to the stand. Three of those witnesses - Lee Cain, Seth Hughes, and Rasun Tyler - identified Hawkins as the person who engaged in a verbal argument with Overton and left the scene of the argument only to return with a knife minutes later and just prior to the stabbing. **See id.** at 155-156, 228-231, 407-409. Hughes testified he saw Hawkins walk towards Overton with the knife, lunge up the steps of Overton's apartment at Overton, and walk away with blood on the knife. **See id.** at 232-233. Hughes maintained he had "no doubt" it was Hawkins who stabbed Overton. **Id.** at 235. Cain stated he saw Hawkins raise his knife in the air in front of Overton and then quickly walk away, leaving Overton clutching his chest. **See id.** at 156-157. Tyler testified he also saw Hawkins leap up the steps towards Overton and quickly walk back down the steps, with Overton following him while holding his chest and saying he had been stabbed. **See id.** at 411. The defense presented the testimony of one witness.

After the jury retired to deliberate, the jurors sent a note to the court stating it could not reach a verdict as a juror had prejudged the case and

refused to discuss the case with the other jurors. Specifically, the note provided:

> We are concerned that one of the jurors will not speak to us. She has stated, "she made up her mind during jury selection last Friday" and is lashing out when the other jurors try to get her to work together and talk about the evidence presented. The juror states she wants to go on "gut feeling."

*Id.* at 809.

The jury foreperson confirmed the contents of the note when asked by the court and revealed the juror in question was Juror #3. The court then colloquied Juror #3, who gave contradictory answers as to the accuracy of the note. However, after the other jurors on the panel were able to confirm they had heard Juror #3 make statements indicating she had prejudged the case prior to any evidence being presented, the court dismissed Juror #3 and replaced her with an alternate juror.

The jury subsequently convicted Hawkins of murder in the third degree. The court sentenced Hawkins to 20 to 40 years' incarceration. Hawkins filed post-sentence motions, which were ultimately denied by operation of law. Hawkins filed a timely notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In the statement, Hawkins raised three issues: one challenging the weight of the evidence, one challenging the sufficiency of the evidence and one challenging the court's decision to dismiss Juror #3. In his appellate brief, however,

Hawkins abandons the weight claim, and only raises the sufficiency claim and the claim alleging error in the court's dismissal of the juror.

We first address Hawkins' claim that the evidence was insufficient to support the third-degree murder conviction. According to Hawkins, the Commonwealth failed to produce any credible evidence that he was the person who stabbed Overton. This claim is without merit.

The evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived from the evidence are sufficient to establish all of the elements of the offense beyond a reasonable doubt. *See Commonwealth v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008). The Commonwealth may sustain its burden entirely by circumstantial evidence. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. *See id.*

To sustain a conviction for third-degree murder, the Commonwealth must show that the defendant committed a killing with legal malice. *See Commonwealth v. Hill*, 629 A.2d 949, 951 (Pa. Super. 1993). Malice includes "recklessness of consequences, and a mind regardless of social duty." *Id.* (citation omitted). Malice may be inferred from the use of a deadly weapon on a vital part of another person's body. *See id.*

Here, we see no error in the trial court's conclusion that the evidence was sufficient to support the third-degree murder conviction. In reaching that conclusion, the trial court repeatedly pointed to the fact that there were three witnesses who testified they saw Hawkins engage in a verbal argument with Overton, walk away from the argument scene towards his apartment, and return to the scene with a knife in his hand. And while the trial court acknowledged these witnesses did not testify, they saw Hawkins actually stab Overton, the trial court cited testimony from all three witnesses which the jury could have found circumstantially supported the conclusion that Hawkins stabbed Overton. Namely, the trial court noted: Cain's testimony that after seeing Hawkins return to the argument scene with a knife and raise the knife towards Overton, he saw Hawkins quickly walk away with Overton holding his chest; Hughes' testimony that he saw Hawkins climb the steps to Overton's apartment, lunge at Overton, and walk away still carrying the knife, now covered in blood; and Tyler's testimony essentially echoing the testimony of Cain and Hughes. **See** Trial Court Opinion, 5/6/22, at 8-9.

Hawkins primarily argues, however, that the Commonwealth failed to establish he was the person who stabbed and killed Overton because the testimony of Cain, Hughes and Tyler was not credible. This claim fails for several reasons.

In the first place, as the Commonwealth points out, Hawkins' claim challenging the credibility of the witnesses goes to the weight of the evidence,

rather than its sufficiency. *See **Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014). Hawkins chose not to pursue his weight claim in his appellate brief, and therefore his claim challenging the credibility of the Commonwealth's witnesses is waived.

In any event, even if preserved, Hawkins' credibility claims do not merit any relief. As the Commonwealth explains:

> [Hawkins'] attempt to discredit Lee Cain's testimony rests upon his eyesight and his allegedly contradictory 9-1-1 call. However, Mr. Cain explained at trial that his eyesight was still good enough at the time of the murder to see what had happened, and explained that he had been frantic during the 9-1-1 call. Furthermore, throughout all the proceedings he had been involved in, Mr. Cain had consistently identified [Hawkins] as the person who had the knife. A mere conflict in the testimony of witnesses does not render the evidence insufficient.

> With regard to Seth Hughes, [Hawkins] appears to be accusing him of the murder because he had blood on his clothes, and threw the clothes away. Aside from (1) the fact that neither of the other witnesses identified Seth Hughes as the killer, and (2) the mass of other evidence… that shows [Hawkins'] guilt, this argument fails because [Hawkins'] own expert agreed that the mere presence of transfer blood on someone's clothes did not prove that the person had stabbed someone. Seth Hughes explained at trial that his clothes had been bloodied when he was helping the dying victim. The jury believed him. The trier of fact - while passing on the credibility of the witnesses and the weight of the evidence - is free to believe all, part, or none of the evidence.

> [Hawkins] next claims that Rasun Tyler was under the influence of alcohol, and that he did not see the murder. It is true that Mr. Tyler agreed that he drank alcohol that night, but he only drank "half a cup" of alcohol over the course of the night. He also testified that [Hawkins] lunged up the steps and left Lashaun Overton clutching his bleeding chest.

Commonwealth's Brief at 23-25 (footnotes citing to notes of testimony and case law omitted).

We agree with the Commonwealth that Hawkins' credibility challenges are without merit, especially considering the rudimentary principle that the jury, as fact-finder, was free to credit the challenged testimony in whole or in part. *See Ramtahal*, 33 A.3d at 607.

Hawkins also tacks on a summary assertion at the end of his argument that the Commonwealth further failed to establish malice. This claim is waived for lack of development. *See Commonwealth v. Rahman*, 75 A3d 497, 504 (Pa. Super. 2013). Even if it were not waived, the claim is without merit. There was testimony Overton was stabbed in his chest, which injured both his heart and liver. *See* N.T. Jury Trial, 6/6/21-6/11/21, at 384, 391, 393-394. The jury was free to infer malice from the use of the knife on these vital body parts. *See Hill*, 629 A.2d at 951.

In his second claim, Hawkins claims the trial court erred in dismissing Juror #3 because, according to Hawkins, the juror never stated she could not be impartial or that she had a preconceived conclusion regarding his guilt or innocence. This claim fails.

As Hawkins acknowledges, the removal of a juror because of the inability to perform a juror's functions is within the sound discretion of the trial court. *See Commonwealth v. Carter*, 643 A.2d 61, 70 (Pa. 1994). This discretion remains even after the jury has been impaneled and the juror sworn. *See id*.

However, a court's discretion in removing a juror must be based upon a sufficient record of competent evidence to support the removal. **See Commonwealth v. Saxton**, 353 A.2d 434, 436 (Pa. 1976).

Here, in rejecting Hawkins' assertion that it had abused its discretion by discharging Juror #3, the trial court provided a detailed account of both the events leading up to the delivery of the note alleging Juror #3 "had made up her mind during jury selection," as well as the colloquies it subsequently conducted to determine whether Juror #3 had violated her oath. Specifically, the trial court detailed the colloquy it conducted with Juror #3. The court noted that although Juror #3 told the court she had not used the exact words in the note, and could not recall exactly what words she used, she did not deny making statements to other jurors regarding her mind set at jury selection. **See** Trial Court Opinion, 5/6/22, at 13-15.

Given these "conflicting and evasive" answers, the court spoke individually with each of the other jurors. **See id.** at 25. Jurors #4, #5, #6, and #10 told the court they had heard Juror #3 say she had made up her mind during jury selection that Hawkins was innocent. **See id.** at 15 -16, 17. Similarly, Jurors #2, #7, # 8, #9, #11, and #12 essentially stated they had heard Juror #3 remark that she had made up her mind about this case during jury selection. **See id.** at 15-18.

Following these colloquies, the court removed Juror #3 on the grounds that she had violated her oath by prejudging the case at jury selection and

before the introduction of any of the evidence on which she had sworn to base her decision. In light of this record, we see no abuse of discretion in the court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2023