J-S30015-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CARL EMERY ZEDAK | : | |
| | : | |
| Appellant | : | No. 1655 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 30, 2019
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0001590-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    FILED JULY 29, 2020

Carl Emery Zedak (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of two counts of aggravated assault.[1]  For the reasons that follow, we affirm.

The trial court set forth the relevant facts:

[A]t trial, Eric Compton ... testified that on the night of July 14, 2018 and into the morning of July 15, 2018, he had invited [Appellant] into his home [located in Aliquippa, Beaver County], and [Appellant] stayed for a couple of hours.  In that time, Compton and [Appellant] proceeded to consume large amounts of alcohol, and then Compton walked [Appellant] home[, which was nearby].  Next, Compton testified that he returned to his home, and after about fifteen minutes, [Appellant] returned to Compton's home, claiming he wasn't done drinking.  According to Compton, [Appellant] refused to leave, and [Appellant] started making inflammatory comments toward Compton's girlfriend,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(1) and (4).

Kimberly Carter. Compton testified that initially he brushed these comments off, but [Appellant] continued, and asked Carter to "shake something[," (i.e., to exhibit her body sexually)]. At this point, Compton demanded that [Appellant] leave. Very shortly after, an altercation ensued between [Appellant] and Compton. According to Compton, while [Appellant] and he were in a bear hug, [Appellant] pulled out a knife and stabbed Compton four times. As a result of this stabbing, Compton suffered injuries to his diaphragm, left lung, spleen, and vital arteries, which required surgical intervention to repair.

After Compton testified, the Commonwealth read multiple stipulations to the jury. First, that the City of Aliquippa Police found blood on [Appellant's] jeans and boots when they took him into custody. Second, that the blood was Compton's. Third, that clumps of long gray hair were discovered on the floor of Compton's kitchen. Fourth, the discovered hair belonged to [Appellant]. Lastly, [Appellant] had two bite marks on his back caused by Compton.

Next, Dr. Graciela Bauza, a licensed trauma surgeon, was called to testify. Dr. Bauza testified that she was working at UPMC Presbyterian Hospital when Compton arrived for emergency treatment. Dr. Bauza testified that Compton had a large amount of blood loss at the scene, and that he had a large amount of blood accumulating in his left chest that was compressing his lung. It was this bleeding that prompted the decision to operate on Compton. Ultimately, Compton had to undergo two operations. Dr. Bauza then testified that it was her medical opinion that Compton would have died but for the medical treatment he received.

The Commonwealth also called Carter, who testified that she was present on the night of the incident, and she drank Tito's vodka and Jägermeister with Compton and [Appellant]. She also testified that she could "confidently" recall viewing [Appellant] consume more than five drinks. Then Carter testified that at some point later into the night, [Appellant] made some inappropriate comments about touching Carter's breasts and buttocks, and this prompted Compton to jump up and punch [Appellant]. Carter testified that [Appellant] and Compton engaged in a bear hug, and she tried to pull them apart. At that point, Carter testified that she ended up on the floor and [Compton] was laying in a pool of

blood. Carter testified that she called 911 and the paramedics came to take Compton to the hospital.

Next, the Commonwealth called Abigail Byrd, who is Carter's daughter that was eight years old at the time of the incident. Byrd testified that she was sleeping in her room with her sister, and they were caused to awaken by a loud bang on the door. She opened up the door and witnessed [Appellant] stab Compton with a pocket knife. After Byrd testified, the Commonwealth rested their case.

Next, [Appellant] testified as part of his own case. [Appellant] testified that he was invited to Compton's home, and they drank an entire bottle of Jägermeister and an entire bottle of vodka over the course of the night. [Appellant] then testified that he did not try to start a fight, but he admitted to making inappropriate comments toward Carter, because he was so intoxicated. Next, [Appellant] testified that Compton got up quickly from the table and punched him two or three times, and he tried to get away from Compton. [Appellant] testified that Compton was biting him and the fight lasted about thirty to forty seconds. Then[, Appellant] … pulled out a knife and stabbed Compton "to get him off of me." [Appellant] testified that he used the knife because Compton was much younger and stronger than him, and he was unable to pull himself away from Compton.

Trial Court Opinion, 11/18/19, at 2-6 (unnumbered).

The Commonwealth charged Appellant with two counts of aggravated assault, as well as one count each of attempted homicide and possession of an instrument of crime (PIC).[2] The matter proceeded to trial in March 2019. The jury found Appellant guilty of two counts of aggravated assault, and not guilty of attempted homicide and PIC.

_____

[2] 18 Pa.C.S.A. §§ 2501(a), 901(a), 907(a).

On March 15, 2019, the Commonwealth filed notice of its intent to seek a mandatory minimum sentence pursuant to Pennsylvania's "three strikes" statute, 42 Pa.C.S.A. § 9714. The statute reads:

> Where the person had at the time of the commission of the current offense previously been convicted of two or more crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement ….

42 Pa.C.S.A. § 9714(a)(2) (emphasis added); see also id. § 9714(g) (defining "crime of violence" and enumerating the various crimes that fall under that definition).

On April 30, 2019, the trial court held a sentencing hearing. The Commonwealth introduced evidence that Appellant had two prior convictions that fell under Section 9714(a)(2) and (g), i.e., arson and attempted homicide.[3] The trial court sentenced Appellant to an aggregate 25 to 50 years in prison pursuant to Section 9714(a)(2).

Appellant filed a timely post-sentence motion, which was denied by operation of law. Appellant then filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant raises three issues for our review:

> I. DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT DID NOT ACT IN JUSTIFIABLE SELF-DEFENSE?

_____

[3] 18 Pa.C.S.A. §§ 3301(a)(1)(i), 2501(a), 901(a).

- 4 -

II. DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANT A NEW TRIAL ON THE BASIS THAT THE VERDICT RENDERED WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE?

III. IS THE MANDATORY SENTENCE IMPOSED BY THE TRIAL COURT UNDER 42 PA.C.S.A. § 9714 UNCONSTITUTIONAL AND AN ILLEGAL SENTENCE WHICH VIOLATED THE EX POST FACTO CLAUSE OF THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS?

Appellant's Brief at 7.

In his first issue, Appellant argues that his convictions cannot stand because the Commonwealth failed to disprove his claim that he stabbed Compton in self-defense. See id. at 15-20.

Preliminarily, we recognize:

When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony.

Commonwealth v. Burns, 765 A.2d 1144, 1148 (Pa. Super. 2020) (citations and paragraph break omitted).

Additionally,

[w]here there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing[, or the infliction of serious bodily harm,] was not committed in self-defense. In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill [or seriously harm] in order to protect himself

- 5 -

against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. See 18 Pa.C.S.A. § 505(b)(2); see also Commonwealth v. Hill, 629 A.2d 949, 952 (Pa. Super. 1993). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue. See Hill, 629 A.2d at 952.

Burns, 765 A.2d at 1148-49.

Here, Appellant contends that the Commonwealth failed to meet its burden to disprove his claim of self-defense, where the evidence established:

Compton was the initial physical aggressor by punching [Appellant] at least three or four times in the head, pulling a clump of hair out of [Appellant's] head and by deeply biting [Appellant's] back at least two or three times before [Appellant] pulled out his pocket knife to stab Compton to get away.

Appellant's Brief at 16; see also id. (asserting that Appellant was prevented from fleeing Compton's attack because Compton and Carter "stood in place between [Appellant] and the front door, with Compton restraining [Appellant]"). According to Appellant, the Commonwealth failed to prove beyond a reasonable doubt that he:

(1) did not reasonably believe it was necessary to stab Compton in order to protect himself against death or serious bodily harm;

(2) provoked the use of force, where Compton was the initial aggressor;

(3) failed to exercise his duty to retreat, where the evidence showed that Compton and Carter had blocked his means of escape.

- 6 -

Id. at 17-19.

Upon review, we find the evidence of record sufficient to disprove Appellant's claim of self-defense and sustain his two aggravated assault convictions.[4] Both Carter and Compton testified that Appellant provoked the confrontation by making derogatory and insulting comments about Carter, and repeatedly refusing to leave their home. See N.T., 3/12/19, at 59-60; N.T., 3/13/19, at 19-20. Carter stated that Appellant's sexual comments were unwanted and caused her to ask Appellant — unsuccessfully — to leave. See N.T., 3/13/19, at 19-20. Compton initially declined to respond to Appellant's derogatory comments. See N.T., 3/12/19, at 61. However, Appellant persisted, and defied Compton's request that he not enter the bedrooms where Compton's minor daughters were sleeping. Id. at 62-64. Compton again told Appellant to leave, but Appellant ignored him. See id. Compton became agitated and attempted to push Appellant out the front door; in

---

[4] The Crimes Code provides that a person is guilty of aggravated assault, in relevant part, where he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

* * *

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1) and (4).

response, Appellant punched Compton in the side. Id. at 64. It was only after these actions that Compton punched Appellant. Id. Given this record, we discern no support for Appellant's claim that Compton was the initial aggressor.

Moreover, Appellant escalated what was initially a scuffle into a knife attack, where Appellant was the only person armed. N.T., 3/12/19, at 64-65; N.T., 3/13/19, at 23, 31. Appellant does not dispute that he stabbed Compton four times. N.T., 3/12/19, at 155. Compton lost substantial amounts of blood and suffered serious injuries which, Dr. Bauza testified, would have been fatal without surgical intervention. Id. at 165, 167-68.

Thus, the evidence, viewed in the light most favorable to the Commonwealth, establishes that Appellant's excessive and disproportionate use of deadly force was unjustifiable to protect himself from serious bodily harm or death. See Commonwealth v. Ventura, 975 A.2d 1128, 1143 (Pa. Super. 2009) (where (1) defendant provoked the use of force against the victim after a verbal dispute concerning defendant's girlfriend; (2) the victim initially defused the dispute and did not strike defendant; (3) after one of defendant's friends punched the victim's friend, the victim stepped forward to protect him; and (4) defendant stabbed the unarmed victim, which resulted in his death – holding that the Commonwealth carried its burden to disprove defendant's claim of self-defense); Burns, 765 A.2d at 1149 (holding that defendant "was not acting in self-defense under 18 Pa.C.S.A. § 505(b)(2).

Assuming that the victim initiated the attack, it is apparent from the severity of the victim's wounds[, which defendant inflicted with a knife upon the unarmed victim,] that [defendant] used more force than was reasonably necessary to protect himself from serious bodily injury."); see also Commonwealth v. Smith, 97 A.3d 782, 789 (Pa. Super. 2014) (same).[5] Accordingly, the Commonwealth disproved Appellant's claim of self-defense beyond a reasonable doubt, and his first issue is meritless.

Appellant next claims that the trial court erred in determining that the jury's verdict was not against the weight of the evidence. See Appellant's Brief at 20-21.

To prevail on a challenge to the weight of the evidence, an appellant must establish that the evidence is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Smith, 146 A.3d 257, 265 (Pa. Super. 2016) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of evidence ...." Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013). Moreover, "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of

_____

[5] We further note the trial court gave the jury a thorough instruction concerning self-defense. See N.T., 3/14/19, at 19-23; see also Commonwealth v. Speight, 854 A.2d 450, 458 (Pa. 2004) (stating that a jury is presumed to follow a trial court's instructions).

the witnesses." Commonwealth v. Talbert, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted).

Here, Appellant challenges the jury's verdict, asserting that uncontradicted evidence purportedly showed (1) Compton was the initial aggressor, who repeatedly punched Appellant in the face, bit him, and ripped hair from his scalp; and (2) Appellant was forced to stab Compton to escape and avoid serious bodily injury. See Appellant's Brief at 20-21.

The jury, as fact-finder, was free to believe all, part, or none of the testimony (which we summarized above in addressing Appellant's first issue); it is well-settled that credibility determinations are solely within a fact-finder's province and we may not reweigh the evidence. Talbert, supra. Further, to the extent the testimony of Appellant and Compton/Carter conflicted, the jury ostensibly credited the latter, and rejected the former. See id. Accordingly, the trial court did not err in rejecting Appellant's weight challenge, nor does the jury's verdict shock our conscience. See Smith, supra.

In his third and final issue, Appellant argues that the trial court imposed an illegal sentence pursuant to 42 Pa.C.S.A. § 9714(a)(2), in violation of the ex post facto clauses of the United States and Pennsylvania Constitutions. See Appellant's Brief at 21-28. Appellant concedes:

(1) he had prior convictions for arson – in 1988 – and attempted homicide – in 1996 – both of which are enumerated as "crimes of violence" under 42 Pa.C.S.A. § 9714(g); and

(2) his conviction of aggravated assault (serious bodily injury) in this case also constitutes a "crime of violence" under Section 9714(g).

Appellant's Brief at 22. However, Appellant claims that the prior version of Section 9714, which was in effect at the time of his first two "crimes of violence," contained a 7-year "lookback" period; therefore, Appellant asserts, "at the time of his second crime of violence, ... Appellant would not have even had his conviction [of arson in 1988] considered his 'second' under the statute, since the two convictions were over 8 years apart." Id. at 24.

"Issues relating to the legality of a sentence are questions of law. Our standard of review over such questions is de novo and our scope of review is plenary." Commonwealth v. Prieto, 206 A.3d 529, 534 (Pa. Super. 2019) (citation omitted). Additionally, to "fall within the ex post facto prohibition, a law must be retrospective — that is it must apply to events occurring before its enactment — and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Commonwealth v. Davis, 760 A.2d 406, 410 (Pa. Super. 2000) (citation omitted).

There is no merit to Appellant's claim that Section 9714 is an ex post facto law, as it is clear the statute is not retroactive. This Court, in Commonwealth v. Ford, 947 A.2d 1251 (Pa. Super. 2008), rejected a nearly identical claim, reasoning:

[Section 9714,] as it currently exists, reflects a legislative amendment enacted December 20, 2000, which omitted the

requirement that to be considered as strikes, previous convictions must have been committed within seven years of the date of the instant offense for which a defendant is receiving sentence. See 2000, Dec. 20, P.L. 811, No. 113, § 2 (effective in 60 days).

Instantly, [appellant] argues that any crimes which occurred prior to the amendment to section 9714 should not be considered strikes for purposes of sentencing a defendant as a third strike offender. However, in Commonwealth v. Smith, 866 A.2d 1138 (Pa. Super. 2005), appeal denied, 583 Pa. 682, 877 A.2d 462 (2005), a panel of this Court firmly rejected the argument that section 9714 was retroactive. See id. at 1143. In so finding, this Court found it determinative that section 9714 applies "prospectively only to future offenses and [does] not change the punishment for the predicate offense." Id. at 1143, citing Commonwealth v. Brown, [] 741 A.2d 726, 732 (Pa. Super. 1999) [(en banc)] (holding that section 9714 is not an ex post facto law), appeal denied, 567 Pa. 755, 790 A.2d 1013 (2001). Moreover, the Court found that "even if we were to deem § 9714 'retroactive' on some level because it takes into account convictions that occurred prior to its enactment, we would find that the legislature surely intended such a result, thereby satisfying [1 Pa.C.S.A.] § 1926 [(presumption against retroactive effect of statutes)]." Id. Accordingly, [appellant's] argument that the application of section 9714 is illegally retroactive is without merit.

Ford, 947 A.2d at 1253-54.

Finally, 42 Pa.C.S.A. § 9714(e) provides that a sentencing court has no authority to impose a sentence less than what is mandated by statute. Accordingly, the trial court had to sentence Appellant pursuant to Section 9714, which is not an ex post facto law or unconstitutional. See Ford, supra.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/29/2020