**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Jimmy BURNS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 2000.
Filed Dec. 20, 2000.

---

**2.** It is probable that this error was simply typographical in nature.

Jeanette D. Dickson, Norristown, for appellant.

Adriene Duvall, Asst. Dist. Atty., Norristown, for Com., appellee.

Before JOYCE, J., OLSZEWSKI, J. and CIRILLO, President Judge Emeritus.*

* President Judge Emeritus Cirillo did not participate in the consideration or decision of this case.

OLSZEWSKI, J.:

¶ 1 Jimmy Burns appeals from the judgment of sentence following his conviction for Attempted Voluntary Manslaughter, Aggravated Assault, and Possession of an Instrument of Crime with the Intent to Employ Criminally. We affirm the conviction and the sentence imposed.

¶ 2 On June 12, 1999, appellant had an altercation with his then girlfriend, Karen Ziegler, (the victim). During the altercation, appellant cut the victim's neck, mouth and left hand with a knife. Appellant stopped his attack only after the victim's mother and daughter came outside. The victim received over 105 stitches and is visibly scarred as a result.

¶ 3 On April 14, 1999, a jury convicted appellant for the above-mentioned crimes. For his Attempted Voluntary Manslaughter conviction, the trial court sentenced appellant in the aggravated range of seven to fourteen years. No other sentences were imposed because the Attempted Voluntary Manslaughter conviction precluded sentencing on the other offenses.

¶ 4 On April 17, 2000, appellant filed Post Sentence Motions to reduce the sentence and for judgment of acquittal and/or arrest of judgment. On April 20, 2000, the trial court denied the motions and this timely appeal followed.

¶ 5 Appellant raises the following questions for our review:

I. Did the trial court err in overruling [appellant's] objection to the Commonwealths' exercise of a peremptory challenge to strike prospective juror number 21, a black female jury candidate, when the Commonwealth failed to offer a credible race-neutral explanation for its decision?

II. Did the trial court err in dismissing for cause prosecutor juror number 15, based on insufficient reasons of record?

III. Was the evidence insufficient to sustain [appellant's] conviction because the Commonwealth failed to disprove self-defense beyond a reasonable doubt?

IV. Was the jury verdict of guilty of criminal attempt voluntary manslaughter contrary to the weight of the evidence which showed that the [appellant] acted in self-defense and the Commonwealth failed to prove beyond a reasonable doubt that the [appellant] did not act in self-defense?

V. Did the court err in imposing a sentence at the top of the aggravated range without stating sufficient reasons on the record?

Appellant's brief at 6.

¶ 6 Appellant's first contention is the trial court erred in overruling his objection to the Commonwealth's peremptory challenge striking Juror number 21, a black female jury candidate, because the Commonwealth failed to offer a credible race-neutral explanation for its decision.

■ ¶ 7 An appellate court will reverse a trial court's finding of no discrimination in the jury selection process only if that finding is clearly erroneous. *See Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338, 349–350 (1989); citing *Batson v. Kentucky,* 476 U.S. 79, 97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

¶ 8 The United States Supreme Court has held that the Equal Protection Clause of the Fourteenth Amendment precludes prosecutors from exercising peremptory strikes against potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to consider the State's case against a black defendant. *See Batson,* 476 U.S. at 97, 106 S.Ct. 1712; *see also Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 728 (2000). In order to challenge the Commonwealth's peremptory strike, the defendant must establish a *prima facie* showing of discrimination based upon race. *See id.* at 97, 106 S.Ct. 1712. Once a *prima facie* 

showing has been made, the burden shifts to the Commonwealth to present a race-neutral explanation for striking the juror(s) in question. *See id.*

¶ 9 Under *Batson,* in order to establish a prima facie showing of discrimination, the defendant must establish (1) the defendant is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) an inference arose under the totality of the circumstances that the prosecutor excluded members of the venire on account of their race. *See id.* at 96, 106 S.Ct. 1712. However, the United States Supreme Court effectively eliminated the first two requirements under *Batson* holding that the defendant and the excluded juror need not share the same race. *See Powers v. Ohio,* 499 U.S. 400, 416, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Thus, to establish a *prima facie* case, now the defendant only needs to show an inference arose under the totality of circumstances that the prosecutor used the strikes to exclude potential jurors due to their race.

¶ 10 "In deciding whether the defendant has made the requisite showing, the trial court should consider all the relevant circumstances." *Batson,* 476 U.S. at 96, 106 S.Ct. 1712. *Batson* noted several examples that would give rise to an inference of discrimination such as where a pattern of strikes against black jurors is shown or where the prosecution's questions and statements during voir dire reveal an inference of discriminatory purpose. *See id.*

¶ 11 In the instant case, there were forty-nine veniremen on the panel, four of whom were African American. *See* N.T., Excerpt of Voir Dire, 2/10/00, 4:30 p.m., at 1. One African American was stricken by the agreement of the parties. *See* N.T., Jury Voir Dire, 2/10/00, at 40. Another was stricken by the trial court for cause.[1] *See* N.T., Excerpt of Voir Dire, 2/10/00, 3:45 p.m., at 7. This left two African Amer-

---

1. This striking of this juror is discussed *infra,* under appellant's second argument.

ican women remaining on the panel, Prospective Juror number 21 and Prospective Juror number 36. The prosecutor used his seventh and final peremptory challenge to strike Prospective Juror number 21. She was the only African American prospective juror stricken from the jury by a peremptory challenge. Prospective Juror number 36, the remaining African American, was not stricken and served on the jury.

¶ 12 Appellant baldly asserts, without any argument in support, that these facts establish a prima facie case of discrimination. We disagree. A single peremptory challenge against an African American prospective juror, without more, falls well short of establishing a pattern of discrimination. Appellant does not point to, nor can we find, any prosecutorial remarks or evidence to give rise to an inference of discriminatory purpose. Because appellant has failed to raise an inference of prosecutorial discrimination, we need not shift the burden to the Commonwealth to justify the decision to strike the minority juror. Therefore, appellant's claim fails.

¶ 13 Appellant next contends the trial court erred in striking for cause Prospective Juror number 15. Appellant, however, has waived this argument because he failed to object on the record.

¶ 14 Under Pa.R.A.P. 302(a), "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." *See also Commonwealth v. Dennis*, 548 Pa. 116, 695 A.2d 409, 411 (1997) ("[I]f appellate courts were to consider issues not raised in the trial court, then the trial would become a dress rehearsal . . . .") (citing *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114, 116 (1974)).

¶ 15 A review of the record indicates that appellant's trial counsel failed to object on the record to the trial court's dismissal for cause. *See* N.T., Excerpt of Voir Dire, 2/10/00, 3:45 p.m., at 7. The trial court noted, with regard to Prospective Jurors numbers 15 and 30, that there were objections stated on the record to the striking of them both for cause. *See* N.T., Jury Voir Dire 2/10/00 at 85. After reviewing the record, however, we find no such objection exists on the record to Prospective Juror number 15 being stricken for cause.

¶ 16 We note that even if appellant had preserved this issue for appeal, the trial court did not abuse its discretion in deciding to strike Prospective Juror number 15. *See Commonwealth v. Rollins*, 558 Pa. 532, 738 A.2d 435, 442 (1999) ("[W]here a prospective juror expresses views that would 'prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his instructions and his oath,' that venireperson may be dismissed for cause."). Thus, we find appellant's claim to be waived for failing to place an objection on the record.

¶ 17 Appellant next contends insufficient evidence exists to sustain his conviction because the Commonwealth failed to disprove self-defense beyond a reasonable doubt.

> When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed.

*Commonwealth v. Smith*, 710 A.2d 1218, 1219 (Pa.Super.1998) *appeal denied*, 557 Pa. 638, 732 A.2d 1209 (1998) (citations omitted). Moreover, a jury may believe all, some or none of a party's testimony. *See Commonwealth v. Purcell*, 403 Pa.Super. 342, 589 A.2d 217, 221 (1991).

¶ 18 Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable

doubt that the killing was not committed in self-defense. *See id.* In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. *See* 18 Pa. C.S.A. § 505(b)(2); *see also Commonwealth v. Hill,* 427 Pa.Super. 440, 629 A.2d 949, 952 (1993). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue. *See Hill,* 629 A.2d at 952.

¶ 19 In the instant case, appellant claims he acted in self-defense. Appellant testified that the victim came towards him swinging a knife and that her wounds occurred during their struggle for the knife. *See* N.T. Trial, 2/14/00, at 33. The question remaining is whether sufficient evidence exists to find that the self-defense claim is disproved beyond a reasonable doubt.

¶ 20 At trial, the victim testified that appellant was the person with the knife. *See* N.T. Trial, 2/11/00, at 25. The victim testified that appellant approached her from behind and proceeded to slash her throat with the knife. *See id.* Appellant then threw the victim to the ground and continued cutting her with the knife. *See id.* The victim testified that after appellant threw her to the ground he stated: "I love you bitch, but I'm going to kill you." *Id.* The victim received over 105 stitches from multiple slash wounds to her neck and her left hand. *See id.* Appellant suffered no wounds during the altercation. *See* N.T. Trial, 2/14/00, at 54. The victim's

mother and the victim's daughter both testified that they saw appellant on top of the victim. *See* N.T. Trial, 2/10/00, at 79, 88. When the victim's mother came outside and shouted at appellant during the altercation, appellant immediately ceased the attack and left the area on foot. *See id.* at 89, 108.

¶ 21 Viewing this evidence in the light most favorable to the Commonwealth, we hold there is sufficient evidence to prove beyond a reasonable doubt that appellant was not acting in self-defense under 18 Pa.C.S.A. § 505(b)(2). Assuming that the victim initiated the attack, it is apparent from the severity of the victim's wounds that appellant used more force than was reasonably necessary to protect himself from serious bodily injury. Moreover, the evidence shows that appellant was able to retreat once he had the knife in his possession but did not do so until the victim's mother came to her aid outside. Either one of these reasons is sufficient under 18 Pa.C.S.A. § 505(b)(2) to disprove appellant's self-defense claim. We hold the Commonwealth has met its burden in disproving appellant's self-defense claim beyond a reasonable doubt. Thus, appellant's claim fails.

¶ 22 Appellant next claims his conviction for attempted voluntary manslaughter was against the weight of the evidence. "[A] true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' but contends that the verdict was against the weight of the evidence." *Armbruster v. Horowitz,* 744 A.2d 285, 286 (Pa.Super.1999) (citations omitted). An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. *See Commonwealth v. Ables,* 404 Pa.Super. 169, 590 A.2d 334, 339 (1991). Credibility issues are decided by the jury and appellate courts rarely overturn jury factual findings that are based on credibility determinations. *See Armbruster,* 744 A.2d

at 287. Indeed, an appellate court should not entertain challenges to the weight of the evidence since our examination is confined to the "cold record." *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111, 113 (1991). Our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *See id.* Thus, we are confined to review if the trial court abused its discretion.

¶ 23 Appellant was convicted of Attempted Voluntary Manslaughter. A person commits Criminal Attempt when, "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). The crime of Voluntary Manslaughter occurs when a person kills an individual without lawful justification and at the time of the killing: 1) he is acting under a sudden and intense passion resulting from serious provocation by the individual killed, or 2) he intentionally or knowingly killed an individual under an unreasonable mistaken belief that the killing was justifiable. *See* 18 Pa. C.S.A. § 2503(a)(1).

■ ¶ 24 At trial, both the victim and appellant testified with conflicting versions of what really occurred. This left the decision of who to believe up to the jury. The victim testified that appellant attacked her with the knife and as a result, she suffered multiple slash wounds resulting in 105 stitches. She also testified that during the attack appellant said to her "I love you, Bitch, but I'm gonna kill you." N.T. Trial, 2/10/00, at 35. Dr. Robert Kraus testified for the Commonwealth as both her examining doctor and as an expert witness. Dr. Kraus testified that one of the victim's multiple neck wounds came within one-half inch of the carotid artery, which if struck, would place an individual in danger of bleeding to death. *Id.* at 153–154. On the other hand, appellant testified the victim attacked him with a knife and that he was acting in self-defense to save his own life. *See* N.T. Trial, 2/14/00 at 34–35.

¶ 25 The jury was free to believe all, part or none of the evidence presented and to assess the credibility of the witnesses. *See Purcell*, 589 A.2d at 221. In this case, the jury found the victim's testimony more credible than appellant's. There was sufficient evidence to find that appellant committed an act which constituted a substantial step toward killing the victim under an unreasonable mistaken belief that the killing was justifiable. By slashing the victim's neck, appellant took a substantial step toward killing the victim. As discussed earlier, appellant's self-defense claim failed because he used more force than was reasonably necessary to save himself from death or great bodily harm. Thus, appellant was operating under an unreasonable mistaken belief that the attempted killing was justifiable under a self-defense claim. Therefore, we find the trial court did not abuse its discretion and that the jury's verdict was not so contrary to the evidence as to shock one's conscience.

■ ¶ 26 Appellant's final claim is the trial court erred in sentencing appellant at the top of the aggravated range without stating sufficient reasons on the record. Sentencing matters are vested in the sound discretion of the sentencing judge, and this Court will not disturb a sentence on appeal absent an abuse of discretion. *See Commonwealth v. Johnson*, 758 A.2d 1214, 1216 (Pa.Super.2000) (citations omitted). "A sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *Id.*

■ ¶ 27 In imposing sentence, a sentencing court is required to consider "the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Widmer*, 446 Pa.Super. 408, 667 A.2d 215, 223 (1995), *rev'd on*

*other grounds.* In particular, the court should "refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Id.* Moreover, "[w]here the sentencing judge had the benefit of a pre-sentence report, [ ] it will be presumed that he 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" *Id.* A sentencing court must state its reasons for the sentence on the record. *See id.* A sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he has been informed by the pre-sentencing report. *See Commonwealth v. Egan,* 451 Pa.Super. 219, 679 A.2d 237 (1996).

¶ 28 In the instant case, the trial court properly followed the above-mentioned mandates in imposing sentence and placed the reasons for sentencing appellant in the aggravated range on the record. The record reflects the trial court reviewed and considered appellant's age, the pre-sentence investigation report and information provided by appellant. *See* N.T. Sentencing Hearing, 4/6/00, at 50. The trial court also considered the fact that the offenses had been established by a jury verdict but noted that it did not separately consider an unrelated prior assault offense that occurred in Alabama. *See id.*

¶ 29 The trial court then listed numerous factors it considered that placed this case in the aggravated range as opposed to the standard range. It considered the seriousness of the injuries inflicted. Appellant inflicted a minimum of at least 5 wounds on the victim resulting in over 105 stitches. *See id.* at 51. It further considered the impact on the victim noting the permanent and visible scarring will be her daily reminder of this offense and that she was left feeling vulnerable as a result of the attack. *See id.* at 51, 52. The trial court also considered the fact that appellant was nearly twice the victim's size, that appellant was a repeat

criminal and that the crime was not ended by appellant but another individual. *See id.* at 52.

¶ 30 Contrary to appellant's contentions, the trial court placed ample reasons on the record for sentencing in the aggravated range. The fact that the trial court considered the pre-sentencing report also rebuts appellant's claim that it did not weigh mitigating factors. *See Widmer,* 667 A.2d at 223. The aggravating factors listed above are more than adequate to sustain sentencing in the aggravated range. Thus, we find no abuse of discretion and appellant's claim fails.

¶ 31 Judgment of sentence affirmed.