J-S19043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                              :              PENNSYLVANIA
                                                :
                   v.                         :
                                                :
                                              :
WILLIAM DOBBS                     :
                                              :
               Appellant          :    No. 54 EDA 2021

Appeal from the Judgment of Sentence Entered August 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001995-2017

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:           **FILED JULY 29, 2022**

Appellant, William Dobbs, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a non-jury trial resulted in his convictions for aggravated assault and possession of an instrument of crime ("PIC").  Finding no merit to his assertion that the Commonwealth failed to present sufficient evidence to disprove his "defense of others" theory of self-defense, we affirm.

On February 17, 2018, complainants Makil Batson and DeAndre Norris accompanied their friend, Jerrett, to his Philadelphia house, where he lived with his mother and Appellant, to help him move his personal belongings to another location in the city.  As they entered the home and began gathering Jerrett's possessions, Appellant said to the young men in a stern voice, "So,

_____

[*] Former Justice specially assigned to the Superior Court.

you're not going to say hello to me in my own house." N.T., 3/23/18, at 11-14.

The three men greeted him appropriately, but Appellant responded by pulling out a pocketknife, exposing the blade, and saying, "Yeah, I'll do it, I'll do something. Go come at me and see what happens." N.T. at 15-16. The three began to argue with Appellant, but Jerrett's mother asked them to step outside so she could talk with Appellant. N.T. at 17.

After Jerrett's mother had "calmed" Appellant down, the three men returned inside, packed Jerrett's electronics and other items, and took them to their car. They left a bed frame in the front yard, which they intended to pick up on their return trip to the house. N.T. at 17-19.

Twenty minutes later, Batson and Norris returned to the house to complete the move, when they were approached by Appellant's nephew, Shane Robinson. Robinson had come to the house at the request of Appellant, who had phoned him and said he was "having a little confrontation with these guys" and that he "needed some help down here…." N.T. at 19, 73-74.

Batson attempted to explain the earlier misunderstanding with Appellant, but Robinson said he "didn't give a [F]" and threw a punch that just missed Batson's face. The two men began to fight in the yard, while Norris and Appellant also began to scuffle. N.T. at 19-21.

According to Appellant, Norris had either hit or pushed him, causing him to fall under a car. N.T. at 74. He testified further that he managed to

get to his feet and pin Norris to the car, when he then observed Batson placing Robinson in a chokehold while the two were on the ground. N.T. at 75-76.

According to Batson, Norris called upon him to release Robinson. Batson let Robinson go immediately and gave no further indication of an intent to continue the fight. N.T. at 21-23.

However, Batson testified that Appellant pulled his pocketknife out, charged the kneeling, unsuspecting Batson, and sliced Batson's head and stabbed him several times in the torso. N.T. at 23-27. Batson sustained injuries including a punctured lung and a head wound that required 19 stitches and a seven-day hospital stay. N.T. at 27, 45-49.

According to Norris, Appellant then turned to him with the knife displayed. Norris attempted in vain to flee. Appellant chased Norris around a car and managed to slice his finger when he attempted to remove the knife from Appellant's grasp. N.T. at 49-53.

After police were called to the scene and concluded their investigation, Appellant was arrested and charged, in the present matter, with one count of aggravated assault and one count of PIC for his actions against complainant Batson.[1]

At Appellant's non-jury trial, he testified in his own defense. He maintained that he had been unaware that his wife's son, Jerrett, was moving

_____

[1] In the companion case at CP-51-CR-0001997-2017, Appellant was charged with aggravated assault and PIC for his actions towards complainant Norris. An appeal in that case is pending before this Court at 55 EDA 2021.

- 3 -

out, and he felt upset and intimidated by how the three young men had entered the house and started unplugging Jerrett's devices without acknowledging him. It was for this reason, he maintained, that he displayed his knife and uttered the words attributed to him. N.T. at 67-72.

Appellant admitted that he called his nephew, Shane Robinson, and related to him that he just had a confrontation with, and was threatened by, Batson and Norris. When Batson and Norris returned to the house to continue moving Jerrett's items, Appellant identified them to Robinson but allegedly said that he did not need Robinson to do anything about it. N.T. at 73-74.

It was from that moment on, Appellant testified, that Batson and Norris provoked the violence that ensued. He claimed that he had to break free from Norris to release Robinson from Batson's chokehold, and that it was during this attempt that Batson picked Appellant up and "dumped [him] on [his] head." N.T. at 74. It was only at this point, Appellant asserted, that he first took out his pocketknife and stabbed Batson in self-defense. N.T. at 74-76.

On cross-examination, Appellant confirmed that he had only lived in his wife's house for one and one-half years, whereas Jerrett had lived there his entire life. N.T. at 76-77. He agreed that he was the only person who displayed a weapon, and he admitted that he no longer had felt intimidated and threatened by Batson and Norris after they had left the house the first time. N.T. at 81.

At the conclusion of Appellant's non-jury trial, the trial court found him guilty of aggravated assault and PIC against Batson. On August 27, 2018, the

- 4 -

trial court sentenced Appellant to an aggregate term of six to twenty years of incarceration.  N.T., 8/27/21, at 21.  After the denial of his post-sentence motions, this timely appeal followed.

Appellant raises one question for this Court's consideration:

Was the evidence sufficient to support the verdicts for aggravated assault and PIC?

Brief of Appellant, at 4.

Our review of challenges to the sufficiency of the evidence is *de novo*, and "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).  This Court must construe the evidence "in the light most favorable to the verdict winner." ***Id***.

In Appellant's argument, he challenges the sufficiency of the evidence offered to prove he committed aggravated assault and PIC in connection with his use of a pocketknife on Batson.  Specifically, Appellant argues that both his and his nephew's respective testimonies presented the credible defense that his actions were necessary to defend his nephew from the unprovoked and life-threatening aggressions of Batson, and that the Commonwealth, in turn, failed to carry its burden to disprove that Appellant's response was justified.  We disagree.

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself [or another] against the use of unlawful force

- 5 -

by the other person. *See* 18 Pa.C.S.[A.] § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt.

*Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008).

A defendant has no "burden to prove" his self-defense claim. *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001). Yet, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the finder of fact. *Id*.

In order for the Commonwealth to meet its burden to disprove self-defense, one of the following elements must exist: (1) the defendant used more force than was necessary to save himself from death, bodily injury, or the commission of a felony; (2) the defendant provoked or continued the use of force; or (3) the defendant had a duty to retreat, which was possible to accomplish with complete safety. *See Commonwealth v. Burns*, 765 A.2d 1144, 1148–49 (Pa. Super. 2000). However, "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [finder of fact] is not required to believe the testimony of the defendant who raises the claim." *Bullock*, *supra* at 824.

At trial, Appellant took the stand and offered a sequence of events that he believed justified his actions against Batson. Central to this testimony was the assertion that neither he nor his nephew, Robinson, provoked the violence between the four men or used force in any way other than in self-defense.

- 6 -

To this point, Appellant insisted his use of a knife on Batson was necessary to prevent serious bodily injury to Robinson. He maintained that both he and Norris actually stopped struggling with one another when they witnessed Batson applying a chokehold on Robinson, and it was only when Batson ignored Norris' plea to release the dangerous hold, Appellant averred, that he charged Batson and used his knife as a last resort to defend his helpless nephew. N.T. at 75-76.

The Commonwealth built a contrary case based not only on the testimonies of Batson and Norris, who alleged Appellant and his nephew provoked and perpetuated the violence at issue, but also on its proffer of the police video and accompanying transcript in which Appellant provided a statement that was substantively inconsistent with his trial testimony that he stabbed Batson in defense of Robinson.

As noted *supra*, Batson related at trial how Appellant had adopted a hostile attitude toward him and Norris when they first entered the home to collect Jerrett's belongings. According to Batson, Appellant eventually displayed his knife to the two young men, stating, "Yeah, I'll do it. I'll do something." N.T. at 16-18. When they returned for a second collection of Jerrett's items, they were confronted by Appellant's nephew, Robinson, whom Appellant had summoned in the interim. Batson attempted to explain their earlier disagreement with Appellant, but Robinson cursed in response and threw a punch at him. N.T. at 20.

Batson testified that he dodged Robinson's punch and eventually used "a headlock, like a chokehold" on Robinson after Robinson continued to pursue him. N.T. at 21-22. When Norris immediately called on him to release the hold, however, he did so, and he was still on his knees when Appellant attacked him with a knife. N.T. at 27.

Norris corroborated this testimony by recounting how Appellant "scraped" the knife along Batson's head and "poked" him in the torso with it after Batson had released Robinson approximately four seconds earlier and was still in the act of standing up. N.T. at 22-24, 50-54. Appellant then turned to Norris and pursued him with the knife. Norris claimed he attempted to run away but was forced to engage Appellant, where he was able to grab Appellant's hand and disarm him. *Id*.

The Commonwealth also produced the video and accompanying transcript of investigators' interview of Appellant conducted on the evening of the incident as further evidence offered to disprove Appellant's testimony that he acted in defense of his nephew. Specifically, the video and transcript contain a statement given by Appellant that Batson had already released his nephew from a chokehold and was approaching Appellant when Appellant rushed to meet him and stabbed him. *See* Commonwealth Exhibit 13, N.T. at 64.

When read in a light most favorable to the Commonwealth as verdict winner, the Commonwealth's evidence sufficed to disprove Appellant's defense that he acted in justifiable defense of his nephew, Robinson, when he

stabbed Batson in the head and torso. The evidence allowed a reasonable finder of fact to conclude that it was Appellant and Robinson who had provoked the violence at issue and that Appellant was responsible for continuing the conflict and injuring both Batson and Norris with his pocketknife after the two unarmed men had ceased engaging in the brawl.[2]

The trial court, which sat as finder of fact, explains in its Pa.R.A.P. 1925(a) opinion that the testimonies of Batson and Norris, respectively, were more credible than that of Appellant. Among the more incredible aspects of Appellant's testimony, the court observed, was the notion that a teenage Batson managed to pick up the 220 pound Appellant and dump him on his head.

Essentially, the court concluded that the evidence showed Appellant initiated a confrontation pitting himself and his nephew, Shane Robinson, against the complainants Batson and Norris. He then unjustifiably and unreasonably escalated the level of violence when he attacked both complainants with a pocketknife at a time when they had disengaged from the conflict. Trial Court Opinion, 8/26/21, at 14.

By asserting that his and his nephew's version of events was more credible and proved his self-defense defense, Appellant effectively asks this Court to reweigh the evidence and the credibility of witnesses, which is not

_____

[2] The same body of evidence also established that Appellant had not taken the opportunity to retreat from Batson and Norris with complete safety, as Appellant decided, instead, to engage in further knife violence against both a kneeling, unarmed Batson and then, afterward, a fleeing Norris.

our role. **Commonwealth v. DeJesus**, 860 A.2d 102, 107 (Pa. 2004) ("This Court cannot substitute its judgment for that of the jury on issues of credibility."); **Commonwealth v. Ramtahal**, 33 A.3d 602, 609 (Pa. 2011) (holding it is within the discretion of the trial court, sitting as finder of fact, to resolve any conflicts in testimony, and we will not disturb its findings supported by the record). Instead, we have examined the record and discerned that the trial court's credibility determinations in favor of the Commonwealth's witnesses and exhibits have support in the record.

Accordingly, for the foregoing reasons, Appellant's claim on appeal fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2022