J-A14030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   :             PENNSYLVANIA
                                   :
              v.                       :
                                   :
                                   :
GABRIEL ALEXANDER STETTLER     :
                                   :
            Appellant            :    No. 1444 EDA 2024

Appeal from the Judgment of Sentence Entered November 14, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001149-2022

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:          **FILED AUGUST 27, 2025**

Appellant Gabriel A. Stettler appeals from the judgment of sentence imposed after a jury convicted Appellant of third-degree murder.[1] On appeal, Appellant challenges the trial court's admission of expert testimony and both the sufficiency and weight of the evidence. We affirm.

The trial court provided the following summary of relevant factual history in this case:

> On February 13, 2022, at approximately 9:18 a.m., officers from the South Whitehall Township Police Department were dispatched to [the residence of Appellant's mother]. The dispatch was based on two 911 calls. One was from a male, later determined to be [Appellant], who advised the dispatcher that a black man had attacked him and grabbed him by the throat, and Appellant had to stab the man to stop him. The second was a female caller, later determined to be [Appellant's] mother, Monica Stettler ("Ms.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

Stettler"). Upon arrival, officers observed [Appellant] standing outside of apartment complex. . . . and a black male on the second-floor landing, bleeding from what appeared to be multiple stab wounds to his back. The male, later identified as Miles Brickhouse, Jr. ("Brickhouse"), was unresponsive. The Lehigh County Coroners' Office pronounced Brickhouse deceased on the scene and later ruled the cause of death to be homicide. When officers spoke to [Appellant], he admitted to stabbing Brickhouse.

Ms. Stettler advised officers that she and [Appellant] lived at the residence and that Brickhouse-who she identified as her boyfriend-had been staying with them for the past few weeks.

Ms. Stettler stated that prior to the incident, [Appellant] was agitated, and stomped around the kitchen and slammed a cabinet door. [Appellant] told her to tell Brickhouse to stay in his room, and then [Appellant] returned to his room. Ms. Stettler stated Brickhouse came out of the bedroom to see what the commotion was. While they were speaking, [Appellant] exited his room and pushed Brickhouse, knocking him to the ground. Brickhouse responded by telling [Appellant] he was going to kill him and asking [Appellant] if he wanted to "take this outside." Ms. Stettler then observed [Appellant] enter his bedroom, put on his shoes, and retrieve a knife from his dresser. Ms. Stettler asked why he needed that, and [Appellant] said it was to protect himself. Ms. Stettler then walked back towards the kitchen. Before she reached the end of the hallway, she saw Brickhouse charge out of the bedroom and into [Appellant's] room. She heard a commotion and thumping, then saw Brickhouse exit [Appellant's] bedroom and prop himself against doorway. Brickhouse told Ms. Stettler that [Appellant] stabbed him.

Later that day, police interviewed [Appellant]. [He] denied [pushing] Brickhouse and stated he was just sitting in his room when Brickhouse charged in, grabbed him by the throat, and threw him down. [Appellant] stated Brickhouse was straddling him, so he grabbed a knife from his dresser and stabbed Brickhouse two or three times to get Brickhouse off of him. [Appellant] said once Brickhouse released him, he left his bedroom and called 911.

Trial Ct. Op., 8/1/24, at 1-3 (citations omitted and some formatting altered).

On April 21, 2023, a jury found Appellant guilty of third-degree murder. On November 14, 2023, the trial court held a sentencing hearing. After reviewing a pre-sentence investigation (PSI) report, the trial court imposed a sentence of fifteen to thirty years' incarceration and one year of probation. Appellant filed timely post-sentence motions, which the trial court denied on February 12, 2024.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues, which we reorder as follows:

1. Was the evidence insufficient to prove the element of malice required for third degree murder and disprove [Appellant's] self-defense claim beyond a reasonable doubt where the Commonwealth did not present any testimony to contradict the facts relevant to the elements of the self-defense claim raised by [Appellant]?

2. Did the trial court abuse its discretion in permitting the Commonwealth to pose hypothetical questions to its expert witness, and allowing the expert to render an opinion based on those hypotheticals, where the hypothetical questions were based on incomplete and inaccurate information therefore making the opinions rendered confusing, unhelpful, and unreliable and outside the scope of his report?

3. Did the trial court abuse its discretion in ruling that the jury's verdict was not against the weight of the evidence where the Commonwealth's witnesses testified that the evidence in the case was consistent with [Appellant's] claim of self-defense and not a single witness for the Commonwealth provided any testimony to directly contradict the facts relevant to the elements of the self-defense claim raised by [Appellant]?

Appellant's Brief at 5.

**Sufficiency of the Evidence**

Appellant challenges the sufficiency of evidence to sustain his conviction for third-degree murder.[2] Specifically, Appellant argues that the Commonwealth failed to disprove his self-defense claim and could not establish the malice requirement for third degree murder. Appellant's Brief at 31-39. Appellant asserts that the "Commonwealth's evidence serves only to establish what [Appellant] concedes: an altercation occurred between Mr. Brickhouse and himself." *Id.* at 37. Appellant contends that the Commonwealth failed to disprove his claim of self-defense because it did not "present any evidence to support the proposition that [the] lack of observable injury to the neck is inconsistent with strangulation." *Id.* at 35. Further, Appellant claims that "[e]ven if the jury concluded that [Appellant] was the initial aggressor, [the victim] then threatened to kill [Appellant] and charged into [Appellant's] bedroom, from which [Appellant] did not have a duty to retreat." *Id.* at 39.

When reviewing a challenge to the sufficiency of the evidence, we are governed by the following standard:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all

---

[2] Because Appellant challenges both the sufficiency and weight of the evidence, we address the sufficiency of the evidence first. *See* ***Commonwealth v. Spence***, 290 A.3d 301, 308 n.4 (Pa. Super. 2023) (stating that because "a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we shall address this issue first" (citation omitted)).

reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Wright*, 255 A.3d 542, 552 (Pa. Super. 2021) (citation omitted and formatting altered). "Importantly, the fact finder, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Id.* (citation omitted and formatting altered).

To convict a defendant of third-degree murder, the Commonwealth needs to prove that the individual acted with malice, which includes "not only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious bodily harm." *Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021). Notably, "[m]alice may be

- 5 -

inferred from the use of a deadly weapon on a vital part of the victim's body," and also "after considering the totality of the circumstances." *Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa. Super. 2012).

A defendant's successful self-defense claim can negate the requisite malice for third degree murder: "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a).

Our Supreme Court has stated that for a defendant to establish a successful self-defense claim, the evidence must show that the defendant:

> (a) . . . reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm;
>
> (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and
>
> (c) that the [defendant] did not violate any duty to retreat.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (formatting altered and citations omitted).

"Where there is a claim of self-defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense." *Commonwealth v. Burns*, 765 A.2d 1144, 1148-49 (Pa. Super. 2000) (citations omitted). If the Commonwealth can establish any one of the following elements beyond a reasonable doubt, it negates a defendant's self-defense claim:

(1) the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony;

(2) the defendant provoked the use of force; or

(3) the defendant had a duty to retreat and that retreat was possible with complete safety.

*Id.* at 1149 (formatting altered and citations omitted).

Further, by proving that a defendant used a deadly weapon on a vital part of the victim's body and disproving any justification for a defendant's use of deadly force, the Commonwealth establishes the requisite malice for third-degree murder. *See Commonwealth v. Ragan*, 743 A.2d 390, 400 (Pa. 1999). In *Burns*, this Court held that there was sufficient evidence to prove that Burns was not acting in self-defense when attacking a victim with a knife since he "suffered no wounds during the altercation" and it was "apparent form the severity of the victim's wounds that [Burns] used more force than was reasonably necessary to protect himself." *Burns*, 765 A.2d at 1149.

Here, the trial court explained:

[T]he Commonwealth's evidence showed [Appellant] initiated the altercation with the victim by pushing him down. He then escalated the situation by arming himself with a deadly weapon, which he used to stab the victim multiple times in the neck and back. Notably, one of the neck wounds was three inches deep and capable of hitting both the carotid and jugular arteries. The record establishes the use of a deadly weapon on a vital part of the victim's body, namely the neck and back, and thus malice was established. As such, the record supports [A]ppellant's conviction for third-degree murder.

Trial Ct. Op., 8/1/24, at 4-5 (citation omitted).

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to support Appellant's conviction. **See Wright**, 255 A.3d at 552. Specifically, the record reflects that Appellant initiated the altercation with the victim, escalated the use of force, and exhibited malice by repeatedly injuring the victim's neck and back with a deadly weapon. **See** N.T., 4/19/23, at 100, 107; N.T., 4/20/23, at 19, 47-49. Like in **Burns**, Appellant suffered no injuries from the encounter and refused treatment at the scene. **See** N.T., 4/18/23, at 94-95. Additionally, expert testimony demonstrated that the particular stab wounds on the victim's back and neck would have been difficult for Appellant to reach from the defensive position he described. **See** N.T., 4/20/23, at 43.

Further, witness testimony conveyed that Appellant provoked the victim and initiated the use of force by pushing him to the ground prior to the altercation. **See** N.T., 4/19/23, at 100. Viewing the record in light most favorable to the Commonwealth, there is sufficient evidence to disprove Appellant's claim self-defense and demonstrate that Appellant acted with malice beyond a reasonable doubt. **See Burns**, 765 A.2d at 1148-49; **see also Jones**, 271 A.3d at 458; **Ragan**, 743 A.2d at 400. Therefore, Appellant is not entitled to relief on this claim.

## Expert Testimony

Next, Appellant claims the trial court abused its discretion by permitting the Commonwealth to pose a hypothetical question not based on evidence and admitting expert testimony addressing that question. Appellant's Brief at 17. Specifically, Appellant refers to the Commonwealth's hypothetical question to expert witness Dr. Rameen Starling-Roney, a forensic pathologist who authored the victim's autopsy report, which was entered into evidence. *Id.* at 18-19; see also N.T., 4/20/23, 17-19. The Commonwealth's question concerned the position that Appellant and the victim were in when the incident occurred. *Id.* at 38. Specifically, Appellant refers to the following exchange at trial:

> Q. Now as I was asking, doctor, there is a person on the floor, he has a knife in his right hand, he is being pinned to the floor by an individual over top of him. That individual is straddling with his knees the right leg of the person on the floor and has his hands around his neck. If in fact, the person on the floor has the knife in his right hand and he swings it toward the body of the person who is attacking him, where would you expect to see that wound if, in fact, he swung his arm this way? And let the record reflect I am indicating basically from my shoulder line toward my mid section, my right hand.
>
> A. Okay, given that scenario, the place that the injuries would most likely occur or the most likely place would be along the left side of the posterior torso of the person that is on top.
>
> Q. You say that because that is the closest side to the knife under that scenario; is that correct?
>
> A. Yes.
>
>       \*  \*  \*
>
> Q. And again, where were the wounds on [the victim's] body?

A. Right side of the posterior torso and the right side of the neck.

N.T., 4/20/23, at 42-43.

Appellant asserts that the trial court erred in permitting the hypothetical and admitting Dr. Starling-Roney's answers because "the underlying information in the hypothetical was factually inaccurate, critically incomplete, and beyond the scope of the expert's report." Appellant's Brief at 19. Further, Appellant argues that Dr. Starling-Roney did not see "the portion of the video of [Appellant's] interview wherein he described what happened," given that "the Commonwealth described and reenacted the [Appellant's] reenactment." *Id.* at 19. Appellant also argues the "Commonwealth's hypotheticals did not include measurements or the positioning of the bodies in comparison to each other." *Id.*

> We begin with our well-established standard of review:
>
> As a general rule, this Court's standard of review of a trial court's evidentiary ruling . . . is limited to determining whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. . . . Evidence is relevant, and therefore admissible, if it logically tends to establish a material fact in the case, or supports a reasonable inference or presumption regarding the existence of a material fact.

*Commonwealth v. Miller*, 897 A.2d 1281, 1286 (Pa. Super. 2006) (citations omitted); *see also Commonwealth v. Petrovich*, 648 A.2d 771, 772 (Pa. 1994) (stating that "the admissibility of expert testimony is vested within the

sound discretion of the trial court and will not be overturned unless the trial court commits an abuse of that discretion").

This Court has explained that "[t]he purpose of expert testimony is to assist in the comprehension of complex issues not within the ordinary knowledge, intelligence and experience of the jury." *Commonwealth v. Clemat*, 218 A.3d 944, 954 (Pa. Super. 2019). The Pennsylvania Rules of Evidence permit an expert witness to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed," requiring that the facts and data underlying the expert's opinion to be disclosed to the trier of fact. Pa.R.E. 703; 705.

Additionally, the *Clemat* Court stated that

it is well-settled that the Commonwealth may ask an expert a hypothetical question so long as there is evidence of record supporting the hypothetical. An expert may give an opinion in response to a hypothetical, provided the set of facts assumed in the hypothetical is eventually supported by competent evidence and reasonable inferences derived therefrom.

*Id.* at 957-58 (citations omitted and some formatting altered).

However, "a hypothetical question need not be based on every fact of record" and opposing counsel may utilize his own hypotheticals to illustrate the omission of relevant facts in previous questioning. *Commonwealth v. Roberts*, 437 A.2d 948, 951 (Pa. 1981). "[A]ny deficit in the clarity of, or basis for, the assumptions upon which the hypothetical is based, may be cured by adequate cross-examination, or redirect examination." *Commonwealth v. Britcher*, 563 A.2d 502, 508 (Pa. Super. 1989). Thus, hypothetical

- 11 -

questions and corresponding expert testimony are admissible when both the question and answer are adequately based on facts of the record and such facts are clearly presented to the jury. *See Clemat*, 218 A.3d at 957-58.

Here, the trial court explained:

[T]he Commonwealth presented Dr. Rameen Starling-Roney as an expert in the field of forensic pathology. The hypothetical question posed by the Commonwealth related to the position that [Appellant] and [the victim] were in leading up to and during the stabbing. I have carefully reviewed Dr. Starling-Roney's testimony, as well [Appellant's] interview wherein he described what happened, and I find each of the factual allegations that comprised the hypothetical question presented were supported by competent evidence and any reasonable inferences derived from said evidence.

Furthermore, defense counsel more than adequately cross-examined the witness regarding the position of each individual. Thus, the hypothetical questions were supported by the evidence, and any arguable defects were cured during the course of cross-examination. I also note that the jury was instructed that in considering the hypothetical questions, it should determine whether the facts assumed have been proven to be true by the evidence presented.

Trial Ct. Op., 8/1/24, at 5-6 (some formatting altered).

Based on our review of the record, we can discern no abuse of discretion on the part of the trial court. *See Miller*, 897 A.2d at 1286. As noted by the trial court, the Commonwealth formed its hypothetical question to Dr. Starling-Roney from admitted evidence in the form of a recording from Appellant's interview with detectives where he related his version of the incident. In answering the hypothetical, Dr. Starling-Roney rendered an

opinion based on his direct knowledge of the victim's wounds and the Appellant's account of the stabbing.

Further, we agree with the trial court that "any arguable defects" in the Commonwealth's hypothetical question to Dr. Starling-Roney "were cured during the course of cross-examination." **See** Trial Ct. Op., 1/8/24, at 6; **see also** N.T., 4/20/23, at 52-53 (establishing that variations in body sizes and starting positions of Appellant and the victim would change the expert's opinion). For these reasons, we discern no abuse of discretion by the trial court. Therefore, Appellant is not entitled to relief on this claim.

## Weight of the Evidence

Lastly, Appellant challenges the weight of evidence and argues that the trial court's denial of a new trial was "manifestly unreasonable" since evidence presented at trial showed that Appellant was justified in using deadly force. Appellant's Brief at 23-24. Specifically, Appellant refers to his mother's testimony to support his claim that he "did not grab a knife until after [the victim] threatened to kill [him]." **Id.** at 24. Additionally, Appellant contends that the Commonwealth's "argument that there was no physical evidence corroborating [Appellant's] claim that he was choked to the point of not being able to breathe is similarly flawed" since "[t]he absence of marks is not inconsistent with strangulation." **Id.** at 24-25.

In reviewing a challenge to the weight of the evidence, we are governed by the following standard of review:

- 13 -

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa. Super. 2017)

(citations omitted).

As this Court has repeatedly stated,

[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

- 14 -

*Spence*, 290 A.3d at 311 (citations omitted and formatting altered).

As previously mentioned, the Commonwealth may disprove the defendant's self-defense claim by showing that the defendant did not reasonably believe he was in danger or that the defendant initially provoked the use of force. *See Burns*, 765 A.2d at 1149.

Although the burden of disproving a self-defense claim rests with the Commonwealth, "a jury is not required to believe the testimony of the defendant who raises the claim" initially. *Commonwealth v. Carbone*, 574 A.2d 584, 589 (Pa. 1990) (citation omitted). A jury's guilty verdict that rejects a defendant's self-defense claim is not "objectively shocking" to the conscience of this court when substantial evidence presented at trial contradicts the defendant's claim. *Commonwealth v. Knox*, 219 A.3d 186, 198 (Pa. Super. 2019).

While the jury's disbelief of a defendant's testimony, taken alone, is not sufficient to disprove his self-defense claim, the jury can reject or accept the testimonies of other witnesses to evaluate the validity of the defendant's self-defense claim. *See Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014). A jury could reasonably infer that contradictory statements and evidence presented at trial are indicative of a defendant's guilt. *See Commonwealth v. Gockley*, 192 A.2d 693, 701 (Pa. 1963); *see also Spence*, 290 A.3d at 311 (explaining that it is the finder of fact's responsibility to resolve contradictory testimony and questions of credibility).

In ***Commonwealth v. Rivera***, 983 A.2d 1211 (Pa. 2009), the defendant challenged the weight of the evidence for his first-degree murder conviction where the defendant presented an imperfect self-defense claim at trial. ***Rivera***, 983 A.2d at 1223. In that case, the Commonwealth presented evidence that Rivera initially provoked the use of force and failed to retreat when he could have safely done so. ***Id.*** at 1224. Ultimately, our Supreme Court found the trial court did not abuse its discretion in rejecting Rivera's weight of evidence challenge. ***Id.*** at 1225-26.

Here, the trial court explained:

> [T]he Commonwealth presented evidence to disprove [Appellant's] claim that he reasonably believed he was in danger of death or serious bodily injury. There was testimony from [Appellant's] mother that he initiated the confrontation by pushing [the victim] to the ground and then grabbing a knife soon thereafter, all prior to [the victim] entering [Appellant's] bedroom. There was no physical evidence corroborating [Appellant's] claim that he was choked to the point of not being able to breath. [Appellant] gave conflicting statements to the 911 dispatcher and to the detectives during his interview. Finally, the physical evidence and testimony provided by the Commonwealth's forensic pathologist contradicted [Appellant's] version of events. The jury evidently considered and weighed all the evidence presented, including any conflicting evidence, and reasonably concluded that [Appellant] did not act in self-defense. In doing so, the jury rendered a verdict consistent with the weight of evidence.

Trial Ct. Op., 4/25/24, at 4-5.

Based on our review of the record, we discern no abuse of discretion by the trial court. ***See Spence***, 290 A.3d at 311. The record supports the trial court's conclusion that Appellant provoked the use of force. ***See Rivera***, 983

A.2d at 1225-26.  Therefore, Appellant is not entitled to relief on this claim.

For these reasons, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/27/2025